UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**1:22-cv-24270-GAYLES**

NINGBO YONGJIA AIDUO AUTO PARTS
MANU CO. , LTD.,

                                                                   **FILED UNDER SEAL**

Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE "A",

Defendants.
_____/

**PLAINTIFF'S, SEALED *EX PARTE* MOTION FOR ENTRY OF TEMPORARY
RESTRAINING ORDER, PRELIMINARY INJUNCTION,
AND ORDER RESTRAINING TRANSFER OF ASSETS**

Plaintiff, NINGBO YONGJIA AIDUO AUTO PARTS MANU CO., LTD., (hereinafter referred to as "Plaintiff"), by and through undersigned counsel and pursuant to 35 U.S.C. §§ 283, 284 Fed. R. Civ. P. 65, and 28 U.S.C §§ 1498 and 1651(a), respectfully moves on an *Ex Parte* basis for entry of temporary restraining order, including preliminary injunction and an order restraining transfer of assets ("Motion for TRO") against Defendants, the Individuals, Partnerships, and Unincorporated Associations (collectively, the "Defendants") identified on Schedule "A", attached hereto. In support thereof, Plaintiff respectfully submits the following Memorandum of Law.

**MEMORANDUM OF LAW**

**I.      INTRODUCTION**

A. Plaintiff is the owner of a United States Design Patent, No. US D 957,138S, for an ornamental design of a snow brush which Plaintiff uses for manufacturing, advertising, marketing, offering for sale and/or soliciting the sale of retail goods, specifically snow brushes. Plaintiff has filed this patent infringement lawsuit against Defendants, as e-commerce sellers that manufacture, distribute, market, solicit, advertise, offer for sale and/or display content infringing on Plaintiff's registered patent through various e-commerce platforms, including but not limited to; Amazon, AliExpress, Walmart, Wish and eBay. *See* Pl.'s Am. Compl., Schedule "A" (ECF No. 7). Every time Defendants offer to sell and/or sell a product using Plaintiff's Patent there is a direct loss, for which monetary damages cannot adequately compensate because monetary damages fail to address the loss of control over Plaintiff's intellectual property and goodwill. *See* Declaration of Ningbo Yongjia Aiduo Auto Parts Manu Co., Ltd., January 4, 2023 at ¶¶ 10-11 ("Yongjia Decl.") (ECF No. 8), attached hereto.

The Patent Act allows Plaintiff to recover the total illegal profits gained through Defendants' manufacture, offer for sale and/or sales of infringing goods. *See* 35 U.S.C. § 289. To preserve that disgorgement remedy, Plaintiff seeks an *ex parte* order restraining Defendants' assets including funds specifically transmitted through all possible online marketplace payment providers, including but not limited to AliExpress, Amazon, Amazon Pay, Alipay, Dhgate, Dhpay, Joom, Paypal, Wish, Wishplay, Ebay and Taobao platforms (collectively referred to as "financial entities"). Plaintiff seeks this remedy because as a result of Defendants flooding the e-commerce marketplace with unauthorized reproductions and derivatives using Plaintiff's Patent, it is highly probable that Plaintiff will continue to suffer irreparable harm unless Defendants' infringing activity is stopped by this Court. *See* Yongjia Decl.at ¶¶ 18-22 (ECF No. 8).

II. **STATEMENT OF FACTS**

### A. Plaintiff's Patent

Plaintiff owns one (1) United States Design Patent, No. US D 957,138S, for an ornamental design of a snow brush (hereinafter "Plaintiff's Patent" or "138 Patent"). Plaintiff's Patent has been registered with the United States Patent and Trademark Office ("USPTO") and is protected from infringement under federal patent law. *See* Pl.'s Am. Compl. at Ex. No. 1 (ECF No. 7-1). Plaintiff demonstrated he is the owner of the 138 Patent by submitting copies of the U.S. Design Patent: 1) No. US D 957,138S, Date: July 12, 2022. *See* Pl.'s Am. Compl. at Ex. 1 (ECF No. 7-1); *see also* Yongjia Decl.at ¶ 6 (ECF No. 8).

Plaintiff is the owner of all rights, title and interest to the 138 Patent, which has been used in connection with the manufacturing, advertising, offer for sale and/or sale of Plaintiff's snow brushes. *Id*. at ¶ 8 (ECF No. 8). Plaintiff advertises, offers for sale and sells the snow brush depicted in the 138 Patent in authorized e-commerce stores such as Amazon, among others. *Id*. (ECF No. 8). Plaintiff has expended time, money and other resources developing, advertising and otherwise promoting the 138 Patent. *Id*. at ¶ 9 (ECF No. 8). Plaintiff suffers irreparable injury any time unauthorized sellers, such as Defendants, sell or offer to sell goods using identical or substantially similar copies or derivatives of the 138 Patent. *Id*. at ¶ 10 (ECF No. 8).

Furthermore, Plaintiff has expended a significant amount of resources in connection with patent enforcement efforts, including legal fees and investigative fees to protect its Patent against counterfeit actions. *See* Pl.'s Am. Compl. at Ex. No. 1 (ECF No. 7-1).

### B. Defendants' Patent Infringement

Without Plaintiff's permission or license, Defendants are manufacturing, promoting, selling, reproducing, offering for sale, and/or distributing goods using Plaintiff's 138 Patent within this District through various Internet based e-commerce stores and fully interactive

commercial Internet websites operating under their seller identification names ("Seller IDs"), as set forth in Schedule A of the Amended Complaint. *See* Pl.'s Am. Compl. at Ex. No. 2 "Schedule A" (ECF No. 7-2); *see also* Yongjia Decl. at ¶ ¶ 17-18 (ECF 8).

As part of its ongoing investigation regarding the sale of infringing products utilizing Plaintiff's 138 Patent, Defendants' Internet based e-commerce stores were accessed under their respective Seller IDs through the Amazon, eBay, AliExpress and Walmart platforms, as identified on Schedule A. *See* Yongjia Decl. at ¶¶ 12-14 (ECF No. 8).  Web page captures and screenshots were taken of the Defendants' infringing products, as they appeared on Defendants' online e-commerce stores, and determined that products are being offered for sale using unauthorized and infringing copies of the 138 Patent and orders were initiated via each Defendants' Seller IDs.  *see* Yongjia Decl. at ¶¶ 14-16 (ECF No. 8); *see also* Declaration of Humberto Rubio, January 12, 2023 at ¶ 5 ("Rubio TRO Decl.") (ECF No. 9), attached hereto and ECF No. 7. In support of this Motion for TRO, Plaintiff has obtained and provided the court with evidence, clearly demonstrating that Defendants are engaged in the advertising, offering for sale, and/or sale of infringing versions of Plaintiff's 138 Patent and that Defendants accomplish their sales of infringing goods via the Internet through their e-commerce stores. *see* Yongjia Decl. at ¶¶ 14-16 (ECF No. 8); *see also* Rubio TRO Decl. at ¶¶ 5 (ECF No. 9) and Schedule B (ECF No. 9 1-7).

A simple comparison of Defendants' infringing goods with Plaintiff's 138 Patent and any layman can observe Defendants' blatant infringement of Plaintiff's exclusive patent as the images that depict the design are virtually exact duplicates or substantially similar images to Plaintiff's 138 Patent. *See* Plaintiff's 138 Patent (Pl.'s Am. Compl. at Ex. 1 (ECF No. 7-1) against screenshots of Defendants' products on their e-commerce stores. S*ee* Schedule B (ECF No. 9 1-7), Rubio TRO Decl. at ¶ 5 (ECF No. 9) and Yongjia Decl. at ¶¶ 12-14 (ECF No. 7).

4

Defendants obtain their sales proceeds, from the e-commerce platforms, by using money transfer, and/or retention processing services with PayPal, Inc., and/or having their sales processed using an aggregate escrow account in order to receive monies from the sale of infringing goods. *see* Rubio TRO Decl. at ¶¶ 7-9 (ECF No. 9). The escrow accounts on these e-commerce platforms are held in various financial institutions, including AliExpress, Amazon, Amazon Pay, Alipay, Dhgate, Dhpay, Joom, Wish, Paypal, Wishplay, Ebay and Taobao among others. *Id.*

Consequently, Plaintiff is enduring continuous damages to its Patent at the hands of the Defendants herein, who unlawfully reproduce goods using Plaintiff's 138 Patent to sell for substantial profits. In addition, the goodwill associated with Plaintiff's 138 Patent is being harmed and if Defendants' willful and intentional infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed. *See* Yongjia Decl. at ¶¶ 16-20 (ECF No. 8); *see also* Pl.'s Am. Compl. at ¶ 27 (ECF No. 7).

### III.   ARGUMENT

#### A.   Temporary Restraining Order and Preliminary Injunction Standard

The Supreme Court held that in patent disputes, "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity" *ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006). Furthermore, the Patent Act, provides that courts may grant injunctive relief on such terms as it may deem reasonable to prevent or restrain infringement. *Id.* at 392 (quoting 35 U.S.C. § 283). The Patent Act also states that "patents shall have the attributes of personal property," including "the right to exclude others from making, using, offering for sale,

or selling the invention" *Id.* (quoting 35 U.S.C. § 261).

In a patent case, in order to obtain a preliminary injunction, a party must demonstrate; (1) a substantial likelihood of the patentee's success on the merits, (2) irreparable harm if the injunction were not granted, (3) the balance of hardships between the parties, and (4) that granting the injunction would not disserve the public interest. *Pass & Seymour, Inc. v. Hubbell, Inc.,* 532 F. Supp. 2d 418, 427 (N.D.N.Y. 2007); *Suntrust Bank v. Houghton Mifflin Company,* 268 F.3d 1257, 1265 (11th Cir. 2001); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F. 3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets relying on affidavits and hearsay materials).

Plaintiff is entitled to a preliminary injunction based on its patent infringement claim because it can show all four factors. *See Tinnus Enters., LLC v. Telebrands Corp.,* 846 F. 3d 1190, 1202 (Fed. Cir. 2017).

**B.      Likelihood of Success on the Merits**

"Each issued patent carries with it a presumption of validity under 35 U.S.C. § 282." *Id.* at 1205. Presumption of validity carried by each issued patent is sufficient to establish a likelihood of success on the validity issue. *Id.* (quoting *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F. 3d 1372, 1377 (Fed. Cir. 2009). In this matter, Plaintiff demonstrated it is the owner of the 138 Patent registered with the USPTO: U.S. Design Patent No. US D 955,138S, Date: July 12, 2022. *See* Pl.'s Am. Compl. at Ex. 1 (ECF No. 10-1); *see also* Yongjia Decl. at ¶ 6 (ECF No. 11).

Design patent infringement requires a showing that the accused design is substantially the same as the claimed design. The criterion is deception of the ordinary observer, such that one design would be confused with the other. *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F. 3d 665, 679 (Fed. Cir. 2008). Under this test, the central inquiry is whether an "ordinary observer," who

6

is familiar with the prior art, would find the overall appearance of the accused product to be "substantially the same" as the overall appearance of the patented design. *Id*. at 677; *see also Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F .3d 1365, 1372 (Fed. Cir. 2006). An infringing product need not be an exact copy of the patented design, and Defendants cannot escape infringement by introducing minor variations into an otherwise copycat product. *Egyptian Goddess*, 543 F. 3d at 670.

Design patents are typically claimed as shown in drawings, and claim construction must be adapted to a pictorial setting. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010); *see also Contessa Food Prods., Inc. v. Conagra, Inc.,* 282 F. 3d 1370, 1377 (Fed. Cir. 2002).  In this case, no detailed verbal description of the figures in the 138 Patent is necessary because each "illustration in the drawing views is its own best description." *Crocs, Inc.* at 1303. Accordingly, the claim of Plaintiff's 138 Patent should be construed only as an ornamental design for a snow brush as shown in Plaintiff's Patent *See* Pl.'s Am. Compl. at Ex. 1 (ECF No. 7-1).

In this matter, Plaintiff asserts a simple comparison of Defendants' infringing goods, which are being offered for sale and/or sold in the United States, with Plaintiff's 138 Patent and any "ordinary observer" can perceive Defendants' blatant infringement of Plaintiff's exclusive patent as the designs are virtually duplicates or substantially similar design and images to Plaintiff's Patent.  *See* ECF No. 7-1, against screenshots of Defendants' products on their e-commerce stores Schedule B (ECF No. 9 1-7), Rubio TRO Decl. at ¶ 5 (ECF No. 9) and Yongjia Decl. at ¶¶ 14-16 (ECF No. 8). In accordance with the Patent Act, the screenshot images demonstrate Defendants' ongoing unauthorized promotion, offer for sale and/or sale of goods bearing Plaintiff's 138 Patent in direct violation of Plaintiff's federal rights to exclude others from

making, using, offering for sale, or selling the 138 Patent. 35 U.S.C. §§ 217 & 261; *see also Tiffany (NJ), LLC v. Dongping*, No. 10-cv-61214, 2010 WL 4450451, (S.D. Fla. Oct. 29, 2010) (finding unopposed declarations supporting intellectual property ownership and exact duplicates of asserted designs were sufficient to establish liability for infringement).

As the side-by-side comparison below reveals, Defendants have misappropriated Plaintiff's Patent ornamental design for snow brushes as shown in figure 1 through 4.[1]

| Design Patent, No. US D 955,138S | Infringing and Counterfeit Products |
|---|---|
| | |

---

[1] Due to the number of Defendants, Plaintiff is enclosing a representative sample. However, Schedule "B" contains representative samples of all the counterfeit products.

8





As shown above, Defendants' snow brushes are the same or substantially the same as the design of the 138 Patent. According to the test prescribed by *Egyptian Goddess*, Defendants' infringing, and counterfeit product infringes the 138 Patent.

**C.  Plaintiff is Suffering Irreparable Injury**

A patent holder possesses "the right to exclude others from using his property." *ebay Inc.*, 547 U.S. at 392. (citing *Fox Film Corp.v. Doyal*, 286 U.S. 123 (1932)).  Defendants' infringing conduct deprives Plaintiff of control over its 138 Patent and of its exclusive patent rights causing irreparable harm.  *See eBay, Inc.* at 395 (holding violation of patent owner's "right to exclude" renders monetary remedies inadequate in a wide range of circumstances).

It is well-settled that, because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole. *Hybritech Inc. v. Abbott Laboratories*, 849 F. 2d 1446, 1456 (Fed. Cir. 1988).  The patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable

in money. *Id.* at 1457.

In this matter, Defendants have blatantly copied Plaintiff's work and have a total disregard for Plaintiff's right to exclude them from using his 138 Patent causing irreparable harm to his efforts to advertise, market, offer for sale and sell his work. Yongjia Decl. at ¶¶ 18-19 (ECF No. 8). Every time Defendants offer to sell and/or sell a product using Plaintiff's 138 Patent there is a direct loss for which monetary damages cannot adequately compensate for because they fail to address the loss of control over Plaintiff's intellectual property and goodwill. Yongjia Decl.at ¶¶ 16-20 (ECF No. 8). Loss of quality control over goods sold utilizing Plaintiff's 138 Patent is neither calculable nor precisely compensable because by Defendants flooding the e-commerce marketplace with unauthorized reproductions and derivatives of the 138 Patent, it is highly probable that Plaintiff will continue to suffer irreparable harm unless Defendants' infringing activity is stopped. Yongjia Decl.at ¶¶ 18-22 (ECF No. 8).

"[L]oss in market share" can itself constitute irreparable harm. *Robert Bosch LLC v. Pylon Mfg. Co.*, 659 F.3d 1142, 1151 (Fed. Cir. 2001). A court "commit[s] a clear error of judgment" when it fails to find irreparable harm in the face of "evidence of . . . the parties' direct competition" and "loss in market share and access to potential customers resulting from [the defendant's] introduction of infringing" products. *Id.*; *see also Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d. Cir. 2002) ("In a competitive industry where consumers are brand-loyal, we believe that loss of market share is a potential harm which cannot be redressed by a legal or an equitable remedy following a trial.") (internal quotation marks and citations omitted).

**D.      The Balance of Hardship Tips Sharply in Plaintiff's Favor**

For the third factor in determining whether to issue a preliminary injunction, the Court

11

must balance the harm to the movant from the denial of the preliminary injunction with the harm that the non-movant will incur if the injunction is granted. *Hybritech*, 849 F.2d at 1457. The balance of the hardships in this case favors Plaintiff. A patent holder who is denied an injunction suffers serious delay in the exercise of the limited-in-time right to exclude, which constitutes a severe hardship. *See Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F. 2d 679, 683 (Fed. Cir. 1990). This harm is amplified by the fact that Defendants are infringing a design patent, where the term of the patent is only 15 years. See 35 U.S.C. § 173. Plaintiff suffers a commercial disadvantage and harm to its product perception and reputation. Conversely, a preliminary injunction will only minimally harm Defendants and will not prevent them from selling their non-infringing products or from marketing non- infringing products. Defendants are also free to sell other goods that do not infringe the 138 Patent.

Because Defendants are engaged in infringement activities, the only hardship they will suffer as a result of an injunction is court-ordered compliance with intellectual property laws. *Adobe Systems, Inc. v. Brenengen*, 928 F. Supp. 616, 618 (E.D.N.C. 1996). In other cases, the Courts have ruled that the evidence of irreparable harm to plaintiff far outweighs the harm that a preliminary injunction may cause Defendant. *CB Fleet Co., Inc. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1083 (S.D. Fla. 2007) (holding a company cannot build a business on infringements and then argue that enforcing the law will cripple that business) *CBS, Inc. v. PrimeTime 24 Joint Venture*, 9 F. Supp. 2d 1333 (S.D. Fla.1998)).

Presently, Defendants are promoting advertising, offering for sale and/or selling goods using Plaintiff's 138 Patent, through their e-commerce stores. Yongjia Decl. at ¶12 (ECF No. 8). Based on Defendants' e-commerce stores, there is good cause to suspect Defendants are all residing and/or operating outside of the United States and/or redistribute products from

sources outside of the Unites States. Rubio TRO Decl. at ¶9 (ECF No. 9). Due to the e-commerce nature, Defendants can easily transfer, conceal and dissipate assets or modify e-commerce data within minutes after obtaining notice of this action leaving Plaintiff with irreparable injury and the Court with limited ability to grant relief. Rubio TRO Decl. at ¶13 (ECF No. 9).

Allowing infringement during the pendency of this lawsuit effectively grants the infringer a license for the pendency of this litigation and encourages others to infringe as well. *Hybritech*, 849 F.2d at 1456 (affirming finding of irreparable harm where, inter alia, absent injunction "other potential infringers will be encouraged to infringe"). Irreparable harm results when other infringement is encouraged because of the absence of an injunction. *Id*.

In contrast, the entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from the wrongful sale of goods using Plaintiff's Patent and preserve the status quo until such time as a hearing can be held. *See Dell Inc. v. Belgium Domains, LLC*, Case No. 07-22674 2007 WL 6862341 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.")

Defendants' infringing activity is conducted without Plaintiff's express assignment, authorization or licensing of his 138 Patent. Yongjia Decl. at ¶¶ 17-19 (ECF No. 8). Consequently, Defendants will suffer no legitimate hardship in the event a temporary restraining order is issued because Defendants have no right to engage in their present infringement activities.

E. **The Relief Sought Serves the Public Interest**

The public interest clearly favors maintaining the integrity of the intellectual property laws. *Belushi*, 598 F. Supp. at 37.; *see also C.B. Fleet Co.* 510 F. Supp. at 1084 (S.D. Fla. 2007)

13

(The public interest can only be served by upholding intellectual property protection and preventing the misappropriation of protected works.)

"[P]ublic policy favors protection of the rights secured by valid patents." *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983). "[P]rotection of patents furthers a strong public policy [that is] advanced by granting preliminary injunctive relief when it appears that, absent such relief, patent rights will be flagrantly violated." H.H. *Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 391 (Fed. Cir. 1987) (internal quotation marks and citation omitted). Indeed, "[w]ithout the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of . . . research." *Smith Int'l, Inc.*, 718 F.2d at 1578.

Protecting Plaintiff's 138 Patent is consistent with promoting the public interest. *Salinger*, 607 F.3d at 82; *see also CBS Broad., Inc. v. EchoStar Comm'ns. Corp.,* 265 F.3d 1193, 1198 (11th Cir. 2001). Similarly in this matter, the public needs to be protected from being defrauded and buying Defendants' infringing goods.

## IV.   THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

### A.   *Ex Parte* Temporary Restraining Order is Appropriate

A court may only issue a temporary restraining order without notice to the adverse party or its attorney if: (a) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition and (b) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65 (b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of

preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brh. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.,* 415 U.S. 423, 439 (1974). A delay in seeking the preliminary injunction militates against a finding of irreparable harm. *Wreal, LLC v. Amazon.com, Inc.,* 840 F.3d 1244, 1248 (11th Cir. 2016).

Defendants, through their e-commerce stores, promote, advertise, offer for sale and/or sell products that infringe on Plaintiff's 138 Patent. *See* Yongjia Decl. at ¶10 (ECF No. 8). The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their unauthorized use of Plaintiff's 138 Patent and preserve the status quo until such time as a hearing can be held. *Dell Inc. v. Belgium Domains, LLC*, Case No. 07-22674, 2007 WL 6862341 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.").

Absent a temporary restraining order, without notice, Defendants can and will significantly alter the status quo before the Court can determine the parties' respective rights. Rubio TRO Decl. at ¶13 (ECF No. 9). Significantly, because Defendants have complete control of their e-commerce stores, at issue and if notice of this action is given Defendants can easily modify the ownership of the e-commerce store, data, content, payment accounts, redirect consumers to other seller identification names, and transfer assets to other seller identification numbers. No notice has been provided to Defendant. Rubio TRO Decl. at ¶¶12-14 (ECF No. 9).

As a result, this Court should prevent an injustice from occurring by issuing an *ex parte* temporary restraining order which precludes Defendants from displaying their infringing goods via their e-commerce stores and websites or modifying or deleting any related content or data.

15

Only such an order will prevent ongoing irreparable harm to Plaintiff and maintain the status quo.

      **B.**    **Entry of an Order Prohibiting Transfer of the Seller IDs During the Pendency of This Action Is Appropriate**

Plaintiff seeks an order temporarily prohibiting Defendants from transferring use or control of the Seller IDs being used and controlled by Defendants to other parties in order to preserve the status quo. Once they become aware of this lawsuit, Defendants can easily, and often will, change the ownership or modify their e-commerce store account, data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs, and thereby frustrate the Court's ability to grant meaningful relief. *See* Rubio TRO Decl. at ¶¶ 12-13 (ECF No. 9). As a result, Plaintiff seeks a temporary order prohibiting Defendants from transferring their e-commerce stores and domain names operating under the Seller IDs poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Plaintiff meaningful relief in accordance with the Patent Act.

      **C.**    **An *Ex Parte* Order Restraining Transfer of Assets Is Appropriate**

In furtherance of an order temporarily restraining Defendants' offer for sale and/or sale of Plaintiff's 138 Patent, Plaintiff requests this Court also enter an Order limiting the transfer of Defendants' unlawfully gained assets. Plaintiff has demonstrated above that it will likely succeed on the merits of its claims. Therefore and in accordance with the Patent Act, Plaintiff will be entitled to the payment of reasonable royalties and lost profits to Defendants throughout the course of their infringing scheme. 35 U.S.C. § 284.

Defendants, through their e-commerce stores, have deliberately infringed on the

protections afforded to Plaintiff by federal patent laws. Plaintiff respectfully requests this Court grant additional *ex parte* relief identifying payment accounts and restraining the transfer of all monies held or received by financial institutions for the benefit of any one or more of the Defendants, and any other financial accounts tied thereto. *SEC v. ETS Payphones*, 408 F. 3d 727, 734 (11th Cir. 2005) (finding it proper to enjoin all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential disgorgement in the case).

Many circuit courts, including the Eleventh Circuit, have upheld the court's authority to restrain assets. *Levi Strauss & Co.* 51 f. 3d at 987-988 (upholding the asset freeze in the case because it allowed appellants to petition the district court to modify the freeze). In *Levi Strauss*, the Eleventh Circuit upheld an order granting an asset restraint against an alleged counterfeiter where the complaint included a request for a permanent injunction and the equitable remedy of disgorgement of the alleged counterfeiter's profits under *Id.* at 987. This Court has held that it may issue broad asset restraints to preserve the availability of permanent relief, including assets that are not directly traceable to the fraudulent activity that serves as a basis for the equitable relief requested. *S.E.C. v. Lauer*, 445 F. Supp. 2d 1362, 1364 (S.D. Fla. 2006) (upholding temporary freeze of all of defendant's assets in order to maintain the status quo).

In this case, Defendants' blatant violations of federal patent laws warrant an *ex parte* order restraining the transfer of their ill-gotten assets. Moreover, as Defendants' businesses are conducted anonymously over the Internet, Plaintiff has an additional cause for *ex parte* relief, as Defendants may easily transfer their assets without the Court's or Plaintiff's knowledge.

### V. A Bond Should Secure the Injunction

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs

and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. Fed. R. Civ. P. 65 (c). The amount of the bond is left to the discretion of the court. *Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd.,* 112 F. 3d 1125, 1127 (11th Cir. 1997). In light of Plaintiff's evidence of infringement, Plaintiff respectfully requests this Court require it to post a bond of no more than Ten Thousand Dollars ($10,000.00).

## VI.  CONCLUSION

Plaintiff is enduring continuous damages to its 138 Patent at the hands of the Defendants in this matter, who unlawfully reproduce goods using Plaintiff's 138 Patent to sell for substantial profits. Defendants are damaging the goodwill associated with Plaintiff's 138 Patent and harming, tricking and confusing the public. As a result, Plaintiff respectfully seeks the granting, under seal, of this Motion for TRO and enter the Order as to Defendants in the form submitted herewith.

Respectfully submitted on this 12th day of January, 2023.

**LAW FIRM OF RUBIO & ASSOCIATES, P.A.**
Attorneys for Plaintiffs
8950 SW 74 Ct., Suite 1804
Miami, Fl 33156
Telephone: (786) 220-2061
Facsimile: (786) 220-2062
Email: hrubio@rubiolegal.com
Email: apuentes@rubiolegal.cm
Email: frubio@rubiolegal.com
Email: info@rubiolegal.com

By:*/s/ Humberto Rubio*
Humberto Rubio, Jr., Esq.
Florida Bar No. 36433
Felipe Rubio, Esq.
Florida Bar No. 123059
M. Arabella Puentes, Esq.
Florida Bar No. 26825