UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
1:22-CV-24270-DPG

XYZ Corp.,

    Plaintiff,

        v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE "A",

    Defendant.

---

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DISMISSED DEFENDANT WAXMAN SALES LLC d/b/a BIRDROCK HOME'S MOTION TO INCREASE BOND

Plaintiff, Ningbo Yongjia Aiduo Auto Parts Mfg. Co., Ltd. (hereinafter, "Plaintiff"), pursuant to the Federal Rules of Civil Procedure and the Local Rules of this Court, by and through undersigned counsel, respectfully submits this Response in Opposition to Dismissed Defendant Waxman Sales, LLC d/b/a BirdRock Home's (hereinafter referred to as "BirdRock") Motion to Increase Bond ("Motion"). (ECF No. 55.) Plaintiff opposes the Motion and in support thereof, respectfully submits the following.

### INTRODUCTION

Plaintiff voluntarily dismissed BirdRock from this suit on February 6, 2023. BirdRock has not been a party to this case since that date. On April 7, 2023, BirdRock filed the instant motion, impermissibly requesting that the Court increase the injunction bond amount as part of its punitive strategy to recover a windfall from Plaintiff. In its attempt to recover non-recoverable damages, BirdRock misrepresents and misapplies both the facts and law. Simply put, both

1

BirdRock's pending motion for attorney's fees and damages and the instant motion to increase bond are retaliatory acts against Plaintiff to unreasonably punish it for instituting this action; BirdRock wants to be compensated for the frustration and inconvenience it experienced having to deal with this injunction from February 5, 2023 through February 7, 2023. Below is a timeline to illustrate the facts related to the TRO in place against BirdRock:

| FRIDAY | MONDAY | TUESDAY |
|---|---|---|
| **February 3, 2023** | **February 6, 2023** | **February 7, 2023** |
| Birdrock learns of its Amazon hold | **10:07 AM** Plaintiff files voluntary dismissal without prejudice dismissing claims against Birdrock | **12:04 PM** Amazon confirms Birdrock's accounts and listing have been released. |
| **12:32 PM** E-mail from Birdrock to Plaintiff's Counsel | **10:26 AM** Plaintiff's counsel informs Amazon of the dismissal and requests that Birdrock's accounts be released and its listings reinstated by the same day. | **7:30 PM** Plaintiff's counsel contacts Amazon to inquire about Birdrock's scheduled payout |
| **SUNDAY** | **11:58 AM** Plaintiff's counsel sends an e-mail to Amazon's retraction department. Birdrock's counsel is copied. | **THURSDAY** |
| **February 5, 2023** | | **February 9, 2023** |
| **10:33 PM** Letter from Birdrock's Counsel to Plaintiff | **11:59 AM** Court enters paperless order dismissing Defendant Birdrock | Amazon sends BirdRock its scheduled payout |
| | **2:46 PM** Plaintiff's counsel sends follow-up e-mail to Amazon. | |
| | **4:36 PM** Amazon confirms that a request is in place to have Birdrock's account released by close of business. | |

Despite its misleading attempts, BirdRock is barred from seeking a bond increase (and recovery under the bond) for multiple reasons: (i) BirdRock lacks standing to pursue this motion because it is not a party to this action; (ii) the Court lacks jurisdiction to consider BirdRock's

2

motion because BirdRock is not a party to this action; (iii) courts may not retroactively increase a bond amount; (iv) BirdRock waived its right (if any) to request a bond increase by failing to appear when required; (v) a bond increase is not in the interest of justice; (vi) the bond increase BirdRock seeks is not based on any actual damages; and (vii) BirdRock is not entitled to recover any costs or damages under the bond.

## ARGUMENT AND AUTHORITIES

A court may issue a temporary restraining order or preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). In the Eleventh Circuit, "it is within the discretion of the court to set the amount of the bond or to require 'no security at all.'" *AFC Enterps, Inc. v. THG Rest. Grp.* LLC, 416 F. App'x 2d 898, 898 (11th Cir. 2011) "Significantly, the purpose of the bond is to compensate the costs and damages sustained by any party found to be wrongfully restrained by the TRO or preliminary injunction." *See HPC US FUND 1, L.P. v. Wood*, No. 13-61825-CIV, 2014 WL 12496559, at 1 (S.D. Fla. May 9, 2014).

"'It is generally settled that, with rare exceptions, a [party] wrongfully enjoined has recourse only against the bond.'" *Sprint Comm'ns Co. L.P. v. CAT Comm'ns Int'l, Inc.,* 335 F.3d 235, 240 (3d Cir. 2003) (citations omitted). "Thus, the bond generally limits the liability of the applicant and informs the applicant of 'the price [it] can expect to pay if the injunction was wrongfully issued.'" *Id.* (citations omitted)

> The purposes of the injunction bond are to:
>
> (1) assure[ ] the enjoined party that it may readily collect damages from the funds posted or the surety provided in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency of the assured, and (2) provide[ ] the plaintiff with notice of the maximum extent of its

potential liability, since the amount of the bond 'is the limit of the damages the defendant can obtain for a wrongful injunction, . . . provided the plaintiff was acting in good faith.' The bond can thus be viewed as a contract in which the court and plaintiff "agree" to the bond amount as the "price" of a wrongful injunction.

*The Continuum Co. Inc. v. Incepts, Inc.,* 873 F.2d 801, 803 (5th Cir. 1989).

Courts and commentators explain that the injunction bond serves not only to compensate a wrongfully enjoined party, but generally to limit the applicant's liability and inform the applicant of the price of a wrongful injunction. *See, e.g.*, *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir. 1990) (The applicant "consents to liability up to the amount of the bond, as the price" of a wrongful injunction.) (quotations omitted); *Buddy Sys., Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164, 1168 (9th Cir. 1976) ("If [an injunction] bond is posted, liability is limited by the terms of the bond or the order of the court that required the posting."); 13 James Wm. Moore et al., Moore's Federal Practice § 65.50[2] (3d ed. 2003) ("The sum posted in [an injunction] bond is [generally] determinative of the limit that may be recovered by a wrongfully restrained party . . . .").

With these principles in mind, when a court grants an applicant's request for a preliminary injunction, it will generally condition its grant on the applicant's posting a bond. The applicant then decides whether to accept the preliminary relief by posting the bond or to withdraw its request. The applicant may base its decision on whether it wants to expose itself to liability up to the bond amount. If the preliminary injunction takes effect and it is later determined a party was wrongfully enjoined, that party may then seek recovery against the posted bond. The recovery generally cannot exceed the amount posted. *See Sprint*, 335 F.3d at 240.

### A. **BirdRock Lacks Standing to File This Motion Because It Is Not a Party to This Action or to the Injunction.**

On February 6th, 2023, Plaintiff filed a notice of dismissal pursuant to Federal Rule 41(a)(1)(A)(i), dismissing BirdRock from this action. (ECF No. 21.)[1] From that point on, BirdRock ceased being a party to this suit. It was no longer a defendant in this case. It was no longer bound by the terms of the TRO. It lacked standing to actively participate as a litigant in this case.[2]

In *HPC US FUND 1, L.P. v. Wood*, this Court held that a defendant lacked standing to seek a bond increase because the TRO had already expired against him. Additionally, case law in this jurisdiction is abundantly clear that a party not subject to an injunction "lacks standing to complain about the absence [or amount] of a bond." *Ungar v. Arafat*, 634 F.3d 46, 53 (1st Cir. 2011). Like the movant in *Ungar v. Arafat,* BirdRock "is not a defendant and is not subject to the injunction. Thus [BirdRock] lacks standing to complain about the absence [or amount] of a bond." *Id.*

Similarly, in *Commonwealth of Puerto Rico v. Price Commission*, 342 F. Supp. 1311, 1312 (D.P.R. 1972), the court held that "it is *necessary* that the party seeking a protective bond be a *party* restrained or enjoined by the Court. Thus, someone not a party to the case or restrained or enjoined by order of the Court is without standing to demand security for possible damages incurred as a result of such restrainment or enjoinment." (Citing 7 Moore's Federal Practice § 65.09, 2d ed)) (emphasis added).  In fact, the *Price Commission* court went a step further to state that "*[i]t is crystal clear* to this Court that a party against which a temporary restraining order

---

[1] That very same day - mere hours later - the Court entered a paperless order pursuant to Plaintiff's notice, thereby dismissing BirdRock from this case without prejudice. (ECF No. 22.)

[2] Yet, in either an unnecessary abundance of caution or an attempt to incur additional "damages" in the form of attorney's fees, BirdRock filed a motion to modify the TRO to explicitly reflect that the TRO no longer applies to BirdRock. [ECF No. 26.]

does not run, has no standing to demand security." *Id.* at 1313 (citing *Powelton Civic Home Owners Ass'n v. Dep't of Hous. & Urb. Dev.*, 284 F. Supp. 809 (E.D. Pa. 1968)) (emphasis added).

Because BirdRock is no longer a party to this case, because the TRO in this matter has expired, and because BirdRock is no longer restrained, BirdRock lacks standing to challenge the amount of the bond and BirdRock's motion should be denied.

Additionally, Rule 65(e) itself states that the only parties that are permitted to recover under the rule are those "found to have been *wrongfully enjoined*." Fed. R. Civ. P. 65(e) (emphasis added). A party is "wrongfully enjoined" when it had a right all along to do what it was enjoined from doing. *See NCAA v. Governor of N.J.*, 939 F.3d 597, 601 (3d Cir. 2019); *Slidell, Inc. v. Millenium Inorganic Chems., Inc.*, 460 F.3d 1047, 1059 (8th Cir. 2006); *Nintendo of Am. V. Lewis Galoob Toys,* 16 F.3d 1032, 1036 (9th Cir. 1994). "The entire concept of 'wrongfully enjoined' envisions a look back from the ultimate conclusion of the case . . . Thus, whether a party was wrongfully enjoined depends upon the final judgment on the merits." *NCAA*, 939 F.3d at 605. The ultimate determination of whether a party was wrongfully enjoined and can recover on an injunction bond "must wait until after trial and a final judgment on the merits." *Id*. The test is not whether the TRO was improperly entered. *Id.*

Thus, because Plaintiff dismissed BirdRock from this case voluntarily, any claims Plaintiff may have had against BirdRock will not be adjudicated and there will be no final judgment. Also, because BirdRock failed to appear at any of the three (3) TRO and Preliminary Injunction hearings, it waived its right and opportunity to challenge the appropriateness of the TRO.  Recovery under a bond is not intended to apply to defendants (or in this case, former defendants) who are dismissed early in the litigation under a Rule 41(a) notice. It is intended to apply in cases where the case is litigated to completion, with a final judgment in a defendant's favor on the merits. There will not

be an adjudication in this case on the issue of whether BirdRock was permitted to sell its alleged infringing products. Without resolution of that issue, the Court cannot determine BirdRock was "wrongfully enjoined." As further shown *infra* BirdRock decided not to pursue a determination by this Court regarding the propriety or wrongfulness of the injunction when it had the opportunity to do so.

### B.     The Court Lacks Jurisdiction to *Reconsider* the Amount of the Bond.

Under Federal Rule of Civil Procedure 65(d), an injunction binds only "the *parties* to the action, their officers, agents, servants, employees, and attorneys, and . . . those persons in active concert or participation with them who receive actual notice of the order . . . " Fed. R. Civ. P. 65(d) (emphasis added). A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court. *See Lathrop v. Unidentified, Wrecked and Abandoned Vessel*, 817 F. Supp. 952, 961 (M.D. Fl. 1993). The district court must, therefore, tailor the injunction to affect only those persons over which it has power. *See Zepeda v. U.S. I.N.S.*, 753 F.2d 719 (9th Cir. 1983). Courts have refused to address issues surrounding an injunction where there is no personal or subject matter jurisdiction. *Id.*

The TRO against BirdRock was dissolved when Plaintiff filed its notice of dismissal on February 6, 2023. (ECF No. 21 and ECF No. 22.) "[A]lthough a preliminary injunction is usually not subject to a fixed time limitation, it is *ipso facto* dissolved by a dismissal of the complaint or the entry of a final decree in the cause." *Cypress Barn, Inc. v. W. Elec. Co.,* 812 F.2d 1363, 1364 (11th Cir.1987); *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). When the TRO was dissolved by Plaintiff's notice of dismissal, BirdRock ceased being subject to this Court's jurisdiction. BirdRock's dismissal was reinforced by (1) the Court's subsequent paperless

order confirming it had been dismissed from this litigation and the TRO and (2) from BirdRock's motion to modify the TRO to explicitly state that it no longer applies to BirdRock. Because it is undisputed that BirdRock is not bound by the TRO and is not a litigant in this case, BirdRock is no longer under the power of this Court and the Court lacks jurisdiction to consider its motion.

Furthermore, a party cannot seek a modification order (in this case, a bond increase) after an injunction has dissolved. Such a modification is void, because there is no injunction to be modified. "A district court cannot prospectively modify an injunction that is not in effect, nor may a district court modify a preliminary injunction . . . retroactively to expand or vitiate rights the parties have already accrued under an injunction". *Phillips*, 590 F.3d at 1093.

Even if the TRO could be magically resurrected as to BirdRock, the very language and terms of the Preliminary Injunction *expressly* exclude its application to dismissed parties such as BirdRock. (ECF No. 35, 44 collectively "Preliminary Injunctions".) Therefore, any attempt by a nonparty such as BirdRock to increase the bond amount for the injunction is impermissible.

At the time the Preliminary Injunctions were entered BirdRock was no longer a party for as long as nine (9) days with respect to the Preliminary Injunction entered February 15, 2023 and twenty-four (24) days with respect to the Preliminary Injunction entered on March 2, 2023.   For these reasons, the Court lacks jurisdiction over BirdRock and should deny its motion.

C.  **Courts May Not Retroactively Increase a Bond Amount.**

Courts routinely reject retroactive increases in bond amounts. *See, e.g.,* Sprint, 335 F.3d 235; *Mead Johnson & Co. v. Abbott Labs.,* 209 F.3d 1032 (7th Cir. 2000). These courts reason that if bond increases were allowed, "applicants would not know their exposure when deciding whether to accept preliminary relief." *Id.* at 241. "The bond's role in limiting the applicant's liability 'would be vitiated if the district judge could increase the bond after the injunction had

been aside." *Id.* The injunction bond "should maintain the limit on the applicant's liability and allow the applicant to 'know what [its] exposure is when the bond is set by the district court." *Id.* "If a retroactive increase is permissible, the injunction bond is no longer cabined; the bond no longer fixes exposure nor caps liability. A retroactive increase subjects the successful applicant to an unexpected and unanticipated liability." *Id*. at 240-41. Because BirdRock is not permitted to request a bond increase, its motion should be denied.

### D. BirdRock Waived Its Right (if Any) to Request a Bond Increase.

BirdRock had ample opportunities prior to this motion to request a bond increase, yet failed to do so. Since appearing in the case on February 5, 2023, the Court held the following hearings regarding the TRO and the Preliminary Injunction:

> **1.** On February 14, 2023 – Hearing regarding *propriety* of the TRO and entering of the Preliminary Injunction.
>
> **2.** On February 21, 2023 – Hearing regarding *propriety* of the TRO and entering of the Preliminary Injunction as to the Aliexpress defendants (rescheduled to March 1, 2023).
>
> **3.** On March 1, 2023 – Hearing regarding *propriety* of the TRO and entering of the Preliminary Injunction as to the Aliexpress defendants.

In all of the Court's orders, the Court stated that defendants or any affected persons would have the opportunity to "challenge the appropriateness" of the TRO at the time of the hearings (*see* ECF No. 14, 18, 36, 38). BirdRock had notice of all of these hearings and ample opportunity to appear and object, dispute, challenge or otherwise pursue a bond increase at those times. However, it failed to do so and therefore waived its opportunity. Plaintiff's Motion, filed nearly two months late, is dilatory and untimely. *See Cent. Water Works Supply, Inc. v. Fisher*, 608 N.E.2d 618, 623 (Ill. App. Ct. 1993) ("At the plaintiff's petition for a preliminary injunction when

9

the injunction was issued, defendant did not request a bond or object to the lack of a bond. He has thus waived the issue.")

Moreover, the explicit terms of this Court's orders provide notice and warn against a party's failure to appear. Both the TRO and temporary injunction orders state that "Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them . . ." (ECF No. 14 ¶ 12 and of ECF No. 18 ¶ 4.)

### E. A Bond Increase Is Not in the Interest of Justice.

Lastly, BirdRock cannot establish that the "interest of justice" requires a bond increase. As a preliminary matter, and contrary to BirdRock's statement, Plaintiff *never* "seized" *anything* from BirdRock. (ECF 55 at 1.) Nor was Plaintiff "permitted" to seize anything from BirdRock. The Court, after being presented with Plaintiff's good faith and reasoned argument and evidence made its discretionary decision to grant Plaintiff's motion for a TRO against BirdRock. This resulted in a delay, not a seizure, of its income from Amazon for a mere 2 days. As soon as Plaintiff confirmed that BirdRock was not Chinese, it promptly (that very day) dismissed this case against BirdRock without prejudice and Defendant received its funds from Amazon two days later (after *Plaintiff* reached out to Amazon to ensure it delivered the payment).

Additionally, BirdRock falsely contends that Plaintiff "exercised little to no due diligence in locating or verifying the identity of BirdRock" before including it as a defendant in this litigation. (ECF No. 55 at 2, 6.) It also erroneously claims that by filing its notice of voluntary dismissal, Plaintiff was "concede[ing]" it had "no good faith claims against BirdRock." (*Id.* at 4.)

The issue of whether Plaintiff exercised due diligence is argued extensively in the Parties' briefing on Defendants Motion for Attorney's Fees and Damages concurrently filed this April 21, 2023 with this motion. For the sake of efficiency, Plaintiff will not re-argue that entire issue

10

here and instead adopts and incorporates it by referenced. In short, Plaintiff explained in detail the numerous good faith and reasonable bases it had for believing (without the benefit of discovery) that Defendant was a Chinese-based infringer posing as an American company. These reasons included, *inter alia*, the content of Plaintiff's Amazon product listing, the non-traditional U.S. address provided, the shipping of products significantly different from the product as advertised, the customer reviews that the product was not as advertised or that reviews were fake, the customer complaints regarding return difficulties, and the office in China. (*See* ECF No. 59)

Further, Plaintiff's notice of voluntary dismissal does *not* constitute an admission that it has no valid or legitimate claims against BirdRock. To the contrary, Plaintiff's dismissal was not based on the merits of the case. This is precisely why Plaintiff refused to dismiss the case with prejudice – to ensure it was *not* considered resolved on the merits. The rule itself is clear that a voluntary dismissal under Rule 41(a)(1)(A)(i) is *not* considered a dismissal on the merits. The purpose of an injunction bond is to provide protection to a defendant who is under injunction . . . "'but who ultimately prevails on the merits.'" *Ungar v. Arafat*, 634 F.3d 46, 53 (1st Cir. 2011) (citations omitted). Allowing BirdRock, who has not prevailed on the merits, to increase the bond amount and then recover under the bond would certainly not further the purpose of the rule.

BirdRock's entire legal argument to support its request is based on the fact that it was frustrating and inconvenient to deal with the hassle of this injunction. However, even if the Court finds that the interest of justice would warrant a bond increase, BirdRock was required to raise this issue at one of the several critical injunction hearings set by this Court - months before this motion was filed. In fact, it is in the interest of justice for Plaintiff to be able to rely on the bond

11

amount set by the Court. The Court should not permit a dismissed defendant to re-enter the case at any time to raise this issue - and then allow it to recover the amount it seeks under the bond. This flies in the face of the policies and purpose of the bond requirement. "If a retroactive increase is permissible, the injunction bond is no longer cabined; the bond no longer fixes exposure nor caps liability. A retroactive increase subjects the successful applicant to an unexpected and unanticipated liability…. there is neither logical nor legal room for a[n] ... increase in an injunction bond after the preliminary injunction has been reversed. *Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.,* 335 F.3d 235, 240–41 (3d Cir. 2003)

If a retroactive increase was to be allowed, it would render the idea of setting the bond futile and any applicant for an injunction would never know of its exposure when deciding to apply for preliminary relief. "A retroactive increase in the amount of an injunction bond on dissolution or reversal is generally improper. The injunction bond should maintain the limit on the applicant's liability and allow the applicant to 'know[ ] just what [its] exposure is when the bond is set by the district court.'" *Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.,* 335 F.3d 235, 240–41 (3d Cir. 2003) *citing Mead Johnson & Co. v. Abbott Labs.,* 209 F.3d 1032 (7th Cir.2000).

Had Plaintiff known it could be subject to a bond amount of $300,000, it would have considered whether it wanted to expose itself to liability at the injunction stage – prior to discovery. Parties must make calculated decisions when pursuing litigation and evaluate all sorts of risks and benefits. It would not be in the interest of justice for the Court to now raise the bond amount and award damages under the bond – especially now, after Plaintiff has dismissed BirdRock from this case and restored it to its pre-TRO state. That kind of uncertainty and unpredictability is not in the interest of justice.

**F.     The Bond Increase BirdRock Seeks Is Not Based on Any Actual Damages.**

In order to recover against an injunction bond, a party must prove that its damages were *proximately caused* by an erroneously issued injunction. *See Milan*, 254 F.3d at 981; *HPC,* 2014 U.S. Dist. LEXIS at 5 (emphasis added). Here, BirdRock's damages claim is premised on what "would have happened" if Amazon had not unfrozen its payments. (ECF No. 55 at 6.) According to BirdRock, the *possibility* of incurring those damages entitles it to recover under the bond. As BirdRock's Controller explains, "[h]ad the $785,115.03 in funds not been released, there was an extreme risk that [BirdRock] would have been unable to continue paying its vendors." (ECF 55-1 at 6.) "There was also the risk that [BirdRock] would not be able to continue designing and sourcing new products to sell for the future of the company." *Id.* "There was also a risk that [BirdRock] would not have been able to make payroll for its personnel." *Id.* "This delay *would have caused* extreme financial hardship." *Id.* (emphasis added).

BirdRock also contends it lost profits that it should be able to recover. As explained in detail in Plaintiff's response to BirdRock's motion for attorneys' fees (ECF No. 59) BirdRock's alleged lost profits during the pendency of the TRO are not based on any actual evidence, but rather only on the self-serving affidavit of the company's owner. (ECF No. 56 at 8.) Further, BirdRock's alleged lost profits incurred post-TRO (which are *not* recoverable for the reasons stated in Plaintiff's response to BirdRock's motion for attorney's fees (ECF No. 59) are not supported by any causation evidence. (ECF No. 55 at 7-8.)

Further, BirdRock should not be permitted to recover damages for the time its employees spent dealing with the inconvenience of this short-lived TRO. There is no evidence that the TRO caused BirdRock to pay these employees any additional sums or overtime. The company would have been paying these employees, including the Controller, regardless of the TRO – and presumably part of their job descriptions is to deal with financial and legal issues as they arise.

### G.     This Motion Is Moot Because BirdRock Is Not Entitled to Recover Any Costs or Damages Under the Bond.

In its Response to BirdRock's Motion for Damages and Attorney's Fees (ECF No. 59), Plaintiff explains the many reasons why BirdRock is not entitled to recover damages/attorney's fees in this case. Because BirdRock is not entitled to damages under the bond, the instant motion to raise the bond amount is moot.

For these reasons, the Court should deny BirdRock's motion to increase the bond amount.

## CONCLUSION

For the reasons stated herein, BirdRock's Motion to Increase the Bond on the already dissolved TRO should be denied.

## NO NEED FOR HEARING

Plaintiff does not believe that a hearing is necessary because amongst others, this case, at this juncture, does not deal with "patent infringement and validity" as it pertains to dismissed defendant BirdRock.

Respectfully submitted on this 21st day of April, 2023.

**LAW FIRM OF RUBIO & ASSOCIATES, P.A.**
Attorneys for Plaintiffs
8950 SW 74 Ct., Suite 1804
Miami, Fl 33156
Telephone: (786) 220-2061
Facsimile: (786) 220-2062
Email: hrubio@rubiolegal.com
Email: apuentes@rubiolegal.com
Email: frubio@rubiolegal.com
Email: info@rubiolegal.com

By:*/s/ Humberto Rubio*
Humberto Rubio, Jr., Esq.
Florida Bar No. 36433
Felipe Rubio, Esq.
Florida Bar No. 123059

14

                                                 M. Arabella Puentes, Esq.
                                                 Florida Bar No. 26825

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the above document has been served through the CMECF filing system and as further provided for by this Court's Orders.

                          */s/ Humberto Rubio*
                       Humberto Rubio
                       **LAW FIRM OF RUBIO & ASSOCIATES, P.A.**
                       Attorneys for Plaintiffs
                       8950 SW 74 Ct., Suite 1804
                       Miami, Fl 33156
                       Telephone: (786) 220-2061
                       Facsimile: (786) 220-2062
                       Email: hrubio@rubiolegal.com
                       Email: apuentes@rubiolegal.com
                       Email: frubio@rubiolegal.com
                       Email: info@rubiolegal.com

                       By:*/s/ Humberto Rubio*
                       Humberto Rubio, Jr., Esq.
                       Florida Bar No. 36433
                       Felipe Rubio, Esq.
                       Florida Bar No. 123059
                       M. Arabella Puentes, Esq.
                       Florida Bar No. 26825