UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
1:22-CV-24270-DPG

XYZ Corp.,

Plaintiff,

   v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE "A",

Defendants.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DISMISSED DEFENDANT WAXMAN SALES, LLC d/b/a BIRDROCK HOME'S
MOTION FOR AWARD OF ATTORNEY'S FEES AND DAMAGES**

  Plaintiff, NINGBO YONGJIA AIDUO AUTO PARTS MFG. CO., LTD., (hereinafter referred to as "Plaintiff"), pursuant to the Federal Rules of Civil Procedure and the Local Rules, by and through undersigned counsel, respectfully submits this Response in Opposition to Dismissed Defendant Waxman Sales, LLC d/b/a BirdRock Home's (hereinafter referred to as "BirdRock"[1]) motion for attorney's fees and damages ("Motion") (ECF No. 56)  Plaintiff opposes the Motion and in support thereof, respectfully submits the following.

---

[1]   Plaintiff voluntarily dismissed BirdRock from this suit on February 6, 2023. BirdRock has not been a party to this case since such date.

## INTRODUCTION

In its Motion, BirdRock twists and turns the good faith actions of Plaintiff into a false narrative of maliciousness and bad faith in its effort to avoid the damage limitations set by the Court's injunction bond. To make matters worse, BirdRock misapplies the law and misrepresents crucial facts to paint Plaintiff and its attorneys as bad actors in its attempt to justify unreasonable, unnecessary, and duplicitous attorney's fees spent in a case that was not litigated, let alone adjudicated by this Court.

In furtherance of its unsupported pursuit of attorney's fees, BirdRock disregards several relevant and governing legal principles that are unfavorable to its position. BirdRock is barred from recovering under the cited statutes and case law for multiple reasons: (i) BirdRock's motion is barred for lack of jurisdiction under Rule 41(a)(1) of the Federal Rules of Civil Procedure; (ii) Rule 65 of the Federal Rules of Civil Procedure does not allow for recovery of attorney's fees in these types of injunction proceedings (iii) Voluntary dismissals under Rule 41(a)(1) do not constitute an adjudication on the merits; (iv) BirdRock's damages are speculative, fail to establish causation and are at best, capped by the bond; (v) BirdRock is not a "prevailing party" under the Patent Act; (vi) BirdRock cannot meet the stringent statutory requirements needed to depict Plaintiff (or its counsel) as a vexatious litigant under 28 U.S.C. § 1927; (vii) There is no evidence that Plaintiff acted in bad faith thereby warranting the Court's invocation of its inherent powers to award attorney's fees and (viii) Plaintiff's Motion is fatally defective because it does not comply with Local Rule 7.3, including but not limited to Local Rule 7.3(a)(4)), 7.3(a)(5) and 7.3(a)(7)).

## FACTUAL BACKGROUND

Plaintiff has a valid and enforceable patent right granted by the United States Patent and Trademark Office, Registration No. US D957,138S (the "Patent"). Plaintiff's patent allows it to file a patent infringement action against any party that is using, without authorization, infringing

copies of the Patent. In this case, Plaintiff identified numerous parties that were using Plaintiff's patent without authorization, all of which, after diligent research and investigation, squarely matched the profile of being foreign nationals selling counterfeit products through e-commerce, including Amazon.com. *See* Declaration of Denny You, April 20, 2023 ¶¶ 5-7 ("Denny Decl.") enclosed as Exhibit "1". There is no doubt that foreign counterfeiters, and in particular those coming from China, employ a series of tactics in an attempt to avoid these lawsuits. ECF 9 at 9 - 10. One of their tactics is to appear as an American operation. Denny Decl. ¶ 12. In this case alone, there are at least five defendants with names using the words "US" or "USA" in their seller identification yet are Chinese or other foreign nationals. *See* Declaration of Felipe Rubio, April 20, 2023 ¶ 14 ("Rubio Decl.") enclosed as Exhibit "2". Undersigned counsel also has examples of Chinese infringers displaying U.S. addresses but ultimately having Chinese physical addresses registered with third-party sellers. Id ¶ 13. It is also common for these Chinese sellers to include false information on their storefronts and to routinely manipulate listings with fake reviews and altered dates. Denny Decl. ¶¶ 9. In fact, this has become such an important issue that federal legislation has been passed to try to curb this by holding platforms accountable and requiring more transparency for consumers, as well as the holders of IP rights. Rubio Decl. ¶ 11.

Plaintiff filed the present action on December 31, 2022 in its attempt to combat the continuous onslaught of foreign IP infringers that plague U.S. patent holders. (ECF No. 1.) On January 12, Plaintiff moved for a temporary restraining order prohibiting BirdRock (and others) from selling infringing items. (ECF No. 10.) The TRO was based on the reasonable belief that the defendants were foreign entities infringing Plaintiff's IP rights. The Court granted Plaintiff's TRO motion on January 18. (Doc. 14.) On Sunday, February 5 at 10:30 PM, counsel for BirdRock sent Plaintiff's counsel a letter explaining the factual basis for its position that BirdRock is, in fact, an Austin, Texas-based company. Immediately after receiving the letter - in fact, the very next

morning - Plaintiff filed a voluntary notice of dismissal of BirdRock pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. [ECF No. 21.] That marked the end of BirdRock's involvement in this case.

As the Court docket shows, BirdRock's only involvement in this case consisted of filing two notices of appearance, two motions to appear *pro hac vice* (ECF Nos. 19, 20, 23, 30) and filing *one* (1) *unopposed* motion to modify the TRO (ECF No. 26) (which was unnecessary and superfluous because the case had already been dismissed against BirdRock by this point). Yet now BirdRock wants the Court to believe it is entitled to <u>one hundred and seven point three</u> (107.3) hours of billable 'litigation' work, $7,515.31 in research fees and $400 in *pro hac vice* fees - the equivalent of $74,923.81 in attorney fees and other speculative and unsupported damages, for a total of approximately $200,000.00.

## ARGUMENT AND AUTHORITIES

Under the well-established American rule, each party is generally responsible for its own attorney's fees unless a statute or contract provides otherwise. *See Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 253 (2010). In its Motion, BirdRock seeks to avoid being bound by the injunction bond amount mandated by Rule 65(c) of the Federal Rules of Civil Procedure. Instead, it is seeking a windfall amount by falsely asserting it is entitled to recover attorney's fees and damages pursuant to several different statutes, none of which apply in this case. Not only is BirdRock's requested amount excessive and unreasonable, federal law prohibits BirdRock from recovering attorney's fees and damages in cases like this for the following reasons:

**A.      BirdRock Is Not Entitled to Attorney's Fees under §285 of the
Patent Code Because BirdRock Is not a "Prevailing Party".**

Assuming the Court does have jurisdiction to resolve this motion (see *infra*), BirdRock's argument that it is entitled to attorney's fees under 35 U.S.C. § 285 fails because a voluntary

dismissal under § 41(a)(1)(A)(i) does not confer "prevailing party" status on a dismissed defendant. *See RFR Indus.,* 477 F.3d at 1351. Section 285 provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. By its terms, the statute requires that the recipient of the attorney's fees be a "prevailing party".

When a plaintiff files a notice of dismissal pursuant to § 41(a)(1)(A)(i), the action is dismissed "without prejudice." *See RFR Indus.,* 477 F.3d at 1351. As the Federal Circuit noted in *RFR Industries*, "a plaintiff's voluntary dismissal without prejudice pursuant to Rule 41(a)(1)(i) does not bestow 'prevailing party' status upon the defendant. In order for a defendant to have 'prevailed' as the result of a Rule 41 dismissal, the dismissal must have 'sufficient judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties' . . . A plaintiff's voluntary dismissal without prejudice pursuant to Rule 41(a)(1)(i), however, does not constitute a change in the legal relationship of the parties because the plaintiff is free to refile its action." *Id.* at 1353. "Moreover . . . a plaintiff's voluntary dismissal under Rule 41(a)(1)(i) is not 'judicially sanctioned' because it does not have the power or discretion to place any conditions on it." *Id.; see O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*, 955 F.3d 990 (Fed. Cir. 2020)

In this case, it is undisputed that Plaintiff filed a legitimate voluntary dismissal notice under Rule 41 which was ratified by the Court's February 6th paperless order (ECF No. 22); the Court did nothing to change the legal relationship of the parties, particularly as related to the merits of the case. Because the voluntary dismissal was without prejudice and did not resolve or litigate any issue, BirdRock is not considered a prevailing party for purposes of the Patent Code's attorney's fees statute.

BirdRock erroneously relies on *Mail Boxes Etc., Inc. v. PBC Services Inc.,* 2007 WL 841664 at 4 (E.D. Ark. Mar. 15, 2007) and *Middlewest Motor Freight Bureau v. U.S.,* 433 F.2d 212, 243 (8th Cir. 1970) for its proposition that it may be considered a prevailing party. However,

neither *Mail Boxes Etc.* nor *Middlewest* involve a § 285 motion for attorney's fees; rather, they involve a motion to recover damages under an injunction bond pursuant to Rule 65 of the Federal Rules of Civil Procedure[2]. The criteria for recovering damages under § 285 of the Patent Code is different from the criteria for recovering damages under a Rule 65 injunction bond. We will address Rule 65 and injunction bonds, *infra.*

The Seminole and dispositive case on the prevailing party inquiry is *O.F. Mossberg & Sons,* a patent infringement action under § 285, where the Federal Circuit held that a voluntary dismissal without prejudice under Rule 41(a)(1)(A)(i) cannot confer prevailing party status on a defendant seeking attorney's fees under the Patent Act, and therefore one where the defendant was not eligible for a fee award.

BirdRock's argument that it is a "prevailing party" because the Court granted its unopposed motion to remove it from the TRO is a red herring. Once BirdRock was dismissed from the case, it was no longer bound by the TRO[3]. Additionally, Plaintiff did not oppose the motion to modify the TRO because it had already dismissed BirdRock from the action - the motion was superfluous and unnecessary. The modification of the TRO did not change the legal relationship of the parties because, after the dismissal notice and the court's paperless order acknowledging the dismissal, there was no legal relationship between the parties. BirdRock does not cite any relevant authority to establish it is a prevailing party under § 285 and therefore it is not entitled to recover attorney fees under that section.

_____

[2]     Rule 65 clearly does not provide for attorney's fees and is a rule of civil procedure, as opposed to 35 U.S.C. § 285, a code on a specific subject matter (patent law).

[3]     A preliminary injunction is *ipso facto* dissolved upon the dismissal of the complaint.  *See Cypress Barn, Inc. v. W. Elec. Co.,* 812 F.2d 1363, 1364 (11th Cir.1987); *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010)

Even if BirdRock was a "prevailing party" under § 285 (which it is not), this is not the type of "exceptional case" contemplated by this statute. The fee-shifting statute of the Patent Act specifically states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party. 35 U.S.C. § 285. Under *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., an "exceptional case" is one that "stands out from the others" either based on (1) the "substantive strength of the party's litigating position (considering both the governing law and the facts of the case)" or (2) the "unreasonable manner in which the case was litigated." 572 U.S. 545, 553 (2014). Whether a case is "exceptional" should be determined on a case-by-case exercise of discretion, considering the totality of the circumstances and using a nonexclusive list of factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6.

### 1. BirdRock Has Not Established that Plaintiff's Case Lacked Substantive Strength.

BirdRock argues this is an "exceptional" case under the statute based on the lone premise that Plaintiff filed a weak case based on insufficient due diligence, perhaps in an attempt "to stifle competition." (ECF No. 56 at 12.)

Under *Octane Fitness*, the Court must first evaluate "the substantive strength of a party's litigating position." "There is no precise rule or formula for determining whether a case is exceptional based on is lack of substantive strength." *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.,* 2020 WL 9460328 at 4 (S.D. Fla. Mar. 6, 2020) (applying Patent Act analysis to Lanham Act case). Courts in this jurisdiction have awarded fees when a claim is found to be "objectively baseless" or "frivolous" and declined fees where a plaintiff has "presented colorable arguments." *See id* at 4-6.

As part of its due diligence prior to instituting this action, Plaintiff reviewed and researched BirdRock's Amazon.com listing as well as its Amazon storefront for evidence that it was, in fact, a Chinese counterfeiter selling identical or nearly identical products which infringed on its Patent rights. Chinese counterfeiters commonly have inconsistent listings, sell products of lesser quality, alter listings with fake reviews and make it difficult to return items once purchased. Denny Decl. ¶¶ 12-13. Through its research, Plaintiff discovered that BirdRock (1) shipped products that were significantly different from the advertised product; (2) had reviews that the products were not as advertised and that their listing contained fake reviews; and (3) made it extremely difficult for customers to return their products. Id. ¶¶ 9-12 Additionally, BirdRock has a Chinese presence and an office in China. Id. ¶ 11.

It is also common for Chinese counterfeiters with an Amazon presence to list a false product availability/listing date and a false ASIN (Amazon Standard Identification Number). Only during discovery can a plaintiff learn that the same ASIN number has been used to sell more than one distinguishable product. Denny Decl. ¶ 9. Therefore, Plaintiff could not assume the validity of BirdRock's listed products' availability date and could not take BirdRock's Amazon listings at face value. Chinese patent infringers are typically dishonest and lack candor in their marketing and sales efforts. Rubio Decl. ¶ 12.

Additionally, it is common for Chinese counterfeiters to provide false U.S. addresses to suggest a U.S. situs. Rubio Decl. ¶ 13. In this case, the address listed for BirdRock was not a traditional U.S. address (*i.e.* 11612 FM 2244 Suite 1-200, Austin, TX 78738). This, too, alerted Plaintiff that it was likely a false listing. In fact, BirdRock's address in its Amazon listing/storefront is different from the address provided by Amazon on their seller data as provided by Amazon. Rubio Decl. ¶ 15.

8

Based on the content of the Amazon product listing, the non-traditional U.S. address provided, the shipping of products significantly different from the product as advertised, the customer reviews that the product was not as advertised, the fake reviews contained in its listing, the customer complaints regarding return difficulties, and the office in China - Plaintiff reasonably concluded that BirdRocks was a Chinese counterfeiter or infringer disguised as a U.S. entity.

BirdRock seeks to mischaracterize this as a "sham" lawsuit based on suspicions and assumptions of bad faith, without *any* factual basis. (ECF No. 56 at 10.) First, it is premature at best for BirdRock to argue that Plaintiff's case lacks the "substantive strength" sufficient for a finding that it is "exceptional." BirdRock has no basis for believing there is no infringement here and has done nothing to demonstrate otherwise. Plaintiff also had a good faith and reasonable belief that the defendants, including Birdrock, were foreign entities conducting business within this jurisdiction, thereby making venue proper. Notwithstanding this, and for argument purposes only, even assuming Plaintiff was aware that BirdRock was in fact a Texas-based entity, BirdRock could still be subject to the Court's jurisdiction. BirdRock claims that patent law only allows domestic entities to be sued only in districts in which they reside or have a regular and established place of business. (ECF No. 56 at 8. (*citing TC Heartland LLC v. Kraft Food Brands LLC*, 137 S. Ct. 1514 (2017)). However, district courts, including this district, have found that venue is proper where a defendant has committed acts of infringement in the district where the action is brought. BirdRock markets, sells and makes its products regularly available to customers in this district, venue in this district would be proper regardless of its status as a domestic entity.[4]

---

[4] BirdRock also argues this entire case should be dismissed based on misjoinder (ECF No. 56 at 10). BirdRock states that a patent owner may not join multiple defendants in a single action unless all defendants are accused of infringement by reason of the same accused product or process. Plaintiff has sued Defendants for infringing on only one product which is protected by one design patent. Section 299 of the America Invents Act governs joinder in actions involving patents. A three-part test is established for joinder of patent defendants that are not jointly or severally liable and Plaintiff satisfies all requirements. The right to relief must: (1) relate to the same accused product or process; (2) arise out of the same series of transactions or occurrences; and (3) there must be questions of fact

Contrary to BirdRock's assertions, Plaintiff is close to obtaining a Final Judgment on this matter. The Court has carefully considered the well-reasoned filings of Plaintiff and has found them plausible and meritorious. Plaintiff has also had an opportunity to interact with multiple defendants in the case and their respective counsel and has resolved a high number of claims, based on Plaintiff's valid and enforceable Patent. Rubio Decl. ¶ 19.

### 2. Plaintiff Did Not Litigate this Case in Bad Faith.

BirdRock's argument that Plaintiff's overall conduct warrants a finding that this is an "exceptional case" based on Plaintiff's bad faith is flawed. BirdRock argues that Plaintiff's case is frivolous because a quick Google search would have revealed that BirdRock was not a foreign entity and a quick Amazon review would have revealed that its products had been in existence since 2017. (ECF No. 56 at 1-2.)

A plaintiff is unable to corroborate if the entity information appearing in Amazon.com (or elsewhere) is in fact correct until it receives the information from the merchant/e-commerce platform. Rubio Decl. ¶. This information is never provided without a subpoena. .Id ¶ 14.

At the time it instituted this action, Plaintiff had not had the benefit of discovery and conducted its own due diligence based on the available information and its personal experience with Chinese infringers. Plaintiff reviewed and researched BirdRock's Amazon.com listing as well as its Amazon storefont. Denny Decl. ¶¶ 7-9. BirdRock at all times appeared to be another Chinese infringer. .Id ¶ 9. Through its research, Plaintiff discovered that BirdRock (1) has a Chinese

---

common to all defendants. 35 U.S.C. § 299. First, Plaintiff satisfies the requirements set forth by this statute because all of the Defendants are selling the same accused product that copies Plaintiff's design in the Snow Brush patent. Second, Plaintiff's specific factual allegations that Defendants are working in a similar manner and during the same time period to sell infringing products, collectively in the same "occurrence of mass harm," show a logical relationship supporting joinder. Third, there is commonality in facts and legal claims since Plaintiff has alleged that every Defendant, without any authorization or license from Plaintiff, has knowingly and willfully offered for sale, sold, and/or imported into the United States, products that directly infringe the Plaintiff's registered patent.

presence and an office in China; (2) shipped products that were significantly different from the advertised product; (3) had reviews that the products was not as advertised and its reviews were fake; and (4) made it extremely difficult for customers to return their products; and (5) had a non-traditional U.S. address. Denny Decl. ¶¶ 7-12 For these reasons, Plaintiff had probable cause to conclude that BirdRock was a likely Chinese counterfeiter or infringer disguised as a U.S. entity.

BirdRock is incorrect when it argues that a quick Google search would have revealed that BirdRock was not a foreign entity and a quick Amazon review would have revealed that its products had been in existence since 2017. (ECF No. 56 at 1-2.) It is also common for Chinese counterfeiters with an Amazon presence to list a false product availability/listing date and false ASIN (Amazon Standard Identification Number). Only during discovery does a plaintiff learn that the same ASIN number has been used to sell more than one distinguishable product. Therefore, *contra* BirdRock's argument, Plaintiff could not assume the validity of BirdRock's product availability date of 2017 and could not accept its Amazon listing(s) at face value. Chinese patent infringers are typically dishonest and lack candor in their marketing and sales efforts.

Similarly, BirdRock's misplaced assertions regarding Plaintiff's alleged bad faith center around the allegation that its 2017 Amazon listing serves to conclude that BirdRock's accused product is prior art to Plaintiff's Patent. BirdRock wants to make believe that its listing has to be taken as true including for the purpose of establishing and concluding prior art. This assertion is not only wrong but imprudent because Plaintiff's Patent is presumed valid and by definition outside of the existing prior art. In fact, at the time of its registration, the assigned examining attorney of the United States Patent and Trademark Office determined the exact opposite to BirdRock's present assertion: that Plaintiff's design had novelty, originality and ornamentality and and entitled to registration under the Patent Act *(see Patent)*. There is a plethora of cases dealing with prior art claims and Amazon *listings* are not the place or mechanism to resolve such claims.

For instance, BirdRock cites to *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1573 (Fed. Cir. 1986) which bears no similarity to the case at hand but serves to show how complex determining prior art claims can be. In *Polaroid*, the parties litigated for at least ten years, participated in pretrial conferences, filed numerous motions, and engaged in extensive discovery including testimony of expert witnesses, all accounting for more than one thousand docket entries. Essentially, prior art cannot be ascertained by an Amazon listing, and is usually the subject of contentious litigation.

Additionally, as stated *supra*, it is not uncommon for Chinese counterfeiters to provide false U.S. addresses to suggest a U.S. situs. In this case, the address listed for BirdRock was not a traditional U.S. address (*i.e.* 11612 FM 2244 Suite 1-200, Austin, TX 78738), which indicated it may have been a false listing. This address was a red flag to Plaintiff that BirdRock may have been a Chinese company posing as an American one. Further, the allegation by BirdRock that a Google search was dispositive to conclude that it was not a foreign entity is as disingenuous as concluding that Amazon listings are dispositive of prior art claims.  Discovery, which includes receiving the registration data from the platform is the only manner of confirming the infringer's real identity and its real location, not a Google search. Rubio Decl. ¶ 14.

Not only was Plaintiff diligent in its institution of this action, it made a swift decision to end this case without extensive litigation. *Se, e.g. Hard Rock Cafe Int'l USA, Inc. v. Rockstar Hotels, Inc*., 2019 WL 3412155 (S.D. Fla. May 20, 2019). Plaintiff filed the present action on December 31, 2022. (ECF No. 1.) On January 12, Plaintiff moved for a TRO prohibiting BirdRock (and others) from selling alleged infringing items. (ECF No. 10.) The TRO was based on the reasonable belief that the defendants were foreign entities and therefore, venue in this court was proper under the patent venue statutes. The Court granted Plaintiff's TRO motion on January 18. (ECF No. 14.) On Sunday, February 5 at 10:30 PM, counsel for BirdRock sent Plaintiff's counsel a letter

explaining the factual basis for its position that BirdRock is, in fact, an Austin, Texas-based company. Rubio Decl. ¶ 5. Immediately after receiving the letter - in fact, the very next morning - Plaintiff filed a voluntary notice of dismissal of BirdRock. Rubio Decl. ¶ 5. Additionally, Plaintiff worked with Amazon directly to ensure BirdRock was given back immediate access to its platform and immediately received its monies. Rubio Decl. ¶¶ 6-11. Plaintiff did not engage in the kind of "dilatory, 'scorched earth', or otherwise abusive tactics that would warrant an 'exceptional case' finding." *Hard Rock*, 2019 WL 3412155 at *7. Like the plaintiffs in *Hard Rock,* "[g]enerally, courts have found cases 'exceptional' and awarded fees for litigation misconduct where the litigation involved much more egregious conduct and more protracted litigation, often including substantive and case-dispositive motions." *Id.* None of those factors are present here and therefore, BirdRock is not entitled to recover attorney's fees under the Patent Act. To further illustrate Plaintiff's prudent actions and how short-lived this injunction was, see enclosed timeline of events, enclosed as Exhibit 3.

### B. BirdRock Is Not Entitled to Damages Under 28 U.S.C. § 1927 Because Plaintiff Did Not Engage in Sanctionable Conduct of any Kind.

The United States Code provides that "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

In *Peterson v. BMI Refractories, Inc.*, 124 F.3d 1386 (11th Cir. 1997), this circuit recognized that the plain language of the statute itself imposes three essential requirements for an award of sanctions under §1927, none of which are even remotely present.

First, the attorney must engage in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus

to the excess proceedings, i.e., the sanction may not exceed "the costs, expenses and attorneys' fees reasonably incurred because of such conduct."

*Id*. at 1396.

With regard to the first requirement, "[a]n attorney multiplies proceedings 'unreasonably and vexatiously' within the meaning of the statute only when the attorney's conduct is so egregious that it is tantamount to bad faith." *Amlong & Amlong, P.A. v. Denny's Inc.,* 500 F.3d 1230, 1239 (11th Cir. 2006); *Doria v. Class Action Services, LLC*, 261 F.R.D. 684 (S.D. Fla. 2009). "The Eleventh Circuit expressly has held that negligent conduct, standing alone, will not support a finding of bad faith under Section 1927 — that is, an attorney's conduct will not warrant sanctions if it simply fails to meet the standard of conduct expected from a reasonable attorney." *Doria*, 261 F.R.D. at 683, *citing Amlong*, 500 F.3d at 1241-42; *see also Benavides v. Miami Atlanta Airfreight, Inc.*, 612 F. Supp. 2d 1236, 1241 (S.D. Fla. 2008) ("negligent conduct alone will not support a finding of bad faith under [28 U.S.C. 1927], and for sanctions to be appropriate something more than a lack of merit is required.")[5]

As stated *supra,* the undisputed facts establish that Plaintiff acted diligently, reasonably and in good faith. For the same reasons, Plaintiff's conduct was neither "unreasonable" nor "vexatious." Second, Plaintiff's conduct did not "multiply the proceedings." To the contrary, once Plaintiff received the explanatory letter from BirdRock (on Sunday, February 5 at 10:30 PM), Plaintiff immediately filed a voluntary notice of dismissal to remove BirdRock from the lawsuit (early morning of Monday, February 6). Rubio Decl. ¶ 14. That same day, Plaintiff sent several separate communications to Amazon with a copy of the dismissal papers and express instructions to reinstate BirdRock's affected listings and to remove any legal holds promptly. Rubio Decl. ¶ ¶ 7-11. Amazon acknowledged receipt of Plaintiff's request that very day and confirmed Amazon's internal team had been given instructions to ensure BirdRock's account would be reinstated by

---

[5] Of course, citing the above cases should not be interpreted as suggesting that Plaintiff acted negligently.

close of business February 6, 2023. Rubio Decl. ¶ 9. On February 7, Amazon confirmed that BirdRock's accounts had been restored. Rubio Decl. ¶ 10. That same day, Plaintiff's counsel contacted Amazon to confirm BirdRock received its scheduled payout. Rubio Decl. ¶ 11. Amazon confirmed it sent BirdRock its scheduled payout on February 9, 2023, and receipt was thereafter confirmed by Birdrock's counsel. The evidence demonstrates that Plaintiff acted promptly and efficiently - requiring little to nothing of BirdRock. This is the exact opposite of multiplying proceedings or bad faith. Plaintiff acted reasonably, with due diligence, and with good faith before, during and after this action was instituted against BirdRock.[6] It certainly did not act unreasonably or vexatiously. Therefore, BirdRock cannot be awarded fees or damages pursuant to § 1927.

**C.      The Court Should Not Use Its "Inherent Powers" to Impose Sanctions Against Plaintiff Because Plaintiff Did Not Litigate in Bad Faith.**

A court may impose sanctions under its inherent power. "The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1213 (11th Cir 1998). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* at 1214.

"A district court's authority to issue sanctions for attorney misconduct under Section 1927 is either broader than or equally as broad as the court's authority to issue a sanction under its inherent powers." *Amlong & Amlong, P.A. v. Denny's, Inc.,* 500 F.3d 1230, 1239 (11th Cir. 2007) (citing *Cordoba v. Dillards, Inc.*, 429 F.3d 1169 (11th Cir. 2005)). Thus, when both grounds are advanced, the Court need only examine whether sanctions are appropriate under Section 1927 because a finding that sanctions are not warranted under Section 1927 would necessarily preclude

---

[6] By contrast, BirdRock has filed unnecessary motions (i.e., its motion to amend the TRO (ECF No. 26)), incurred unreasonable amounts of attorney's fees, and harassed Plaintiff by filing this baseless motion seeking excessive damages - all of which are examples of bad faith and warrant the imposition of sanctions.

sanctions under the court's inherent power. *Id.* Again, sanctions under both Section 1927 or the court's inherent authority require a finding of bad faith. *Id.* at 1259 (*citing Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1326 (11th Cir. 2002)). As stated *supra*, BirdRock has not demonstrated that Plaintiff acted in bad faith during the limited period of time BirdRock was a party to this action or at any time during the course of this litigation and therefore, the Court should not award damages to BirdRock under its inherent power.

### D.   BirdRock Is Not Entitled to Recover Under the Bond Because It Was Not Wrongfully Enjoined.

To recover against an injunction bond, BirdRock must prove it was wrongfully enjoined. *See Milan Exp., Inc. v. Averitt Exp., Inc.*, 254 F.3d 966, 981 (11th Cir. 2001). In this case, BirdRock has failed to establish that the injunction was wrongfully issued. The court issued an injunction against two of BirdRock's products and there has been no judicial determination on the infringement issue. That Plaintiff dismissed its own case does not mean the injunction was wrongfully issued. *See Pierce* at 3. "The dismissal of a claim by a plaintiff, when consented to by the enjoined party, is not a determination of the merits and cannot render the plaintiff liable on the bond." *Pierce* at 4 (citing Wright & Miller 11A § 2972) ("dismissal of the action by the party who instituted it, if consented to by the other party, precludes proceeding against the bond.") When BirdRock filed its motion to modify the TRO to remove it from this action, BirdRock was effectively consenting to its dismissal from this action, which effectively precludes BirdRock from recovering against the bond. In fact BirdRock asked to be 'stricken' from Schedule A of the Complaint (*see* ECF No. 26-1 ¶ 3).

The *Pierce* case, cited by Birdrock is inapposite to their argument because it holds: "[W]here there has never been an "ultimate decision on the merits after a full hearing" on the alleged invalidity and unenforceability of a patent, there can be no finding that the injunction was wrongfully issued. As such, there cannot be any recovery against the bond. *See Pierce Mfg., Inc. v. E-One, Inc.*, No. 8:18-CV-617-TPB-TGW, 2022 WL 479802, at *2 (M.D. Fla. Feb. 16, 2022).

BirdRock is bootstrapping the rightfulness or impropriety of the TRO to the motion for attorney's fees, however, this relief cannot be requested at this time, especially having relinquished jurisdiction at the time BirdRock consented to being dismissed and removed from the case when it filed the *unopposed* motion to modify the TRO and failed to reserve any rights or to challenge its impropriety in any of the TRO hearings held by this Court (ECF No. 26).

### E.   The Court Lacks Jurisdiction to Consider BirdRock's Untimely Motion and BirdRock lacks Standing

On February 6, 2023, Plaintiff filed a Notice of Voluntary Dismissal of BirdRock under Federal Rule of Civil Procedure 41(a)(1)(A)(i). [ECF No. 21.] This notice reflected Plaintiff's desire to dismiss, without prejudice, all claims asserted in this action against BirdRock. Rule 41(a)(1)(A)(i) provides that, as a general proposition, "the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ P. 41(a)(1)(A)(i); *See RFR Indus. v. Century Steps, Inc.,* 477 F.3d 1348, 1351 (Fed. Cir. 2007). It is undisputed that Plaintiff's notice was timely filed - prior to BirdRock filing an answer or a motion for summary judgment. Therefore, Plaintiff's notice was immediately self-effectuating and dismissal was appropriate and effective, without further action on the Court's part or BirdRock's part. *See id.* at 1351. This dismissal immediately divested the Court of jurisdiction over BirdRock. *See Shore v. Greenspoon Marder, P.A.,* 2019 U.S. Dist. LEXIS 195233 at *9 (M.D. Fla Oct. 23, 2019); *Barber v. BP, PLC,* 2010 U.S. Dist. LEXIS 87373 at *3-4 (S.D. Ala. Aug. 16, 2010). This Court confirmed the dismissal when it entered the paperless order ratifying the same (ECF No. 21).   Because the Court lost jurisdiction over BirdRock at the time of the dismissal, it may not consider BirdRock's instant motion for fees and damages.

As of February 6, 2023, BirdRock was no longer a party to this case. When Plaintiff voluntarily dismissed BirdRock under Rule 41, it ceased being a party to this case. "The filing of

a notice of voluntary dismissal with the court automatically terminates the action as to the defendants who are the subjects of the notice . . . . Such a dismissal leaves the parties as though no action had been brought." *Am. Soccer Co. v. Score First Enterps.*, 187 F.3d 1108, 1110 (9th Cir. 1999); *see Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999).

Nothing in the dismissal notice or the Court's paperless order (ECF No. 22) preserved BirdRock's standing to participate in this case as a litigant. Nothing in the Court's order granting BirdRock's request for modification of the TRO preserved BirdRock's standing to participate in this case as a litigant. BirdRock never asked the Court to preserve its right to seek damages litigation expenses and attorney's fees during the time it was a litigant. Because a Rule 41(a)(1)(A)(i) dismissal leaves the parties as though no action had been brought, there can be no prevailing party. BirdRock failed to appear at any of the three (3) TRO and Preliminary Injunction hearings which expressly took place to determine its rightfulness. Thus, it follows that each party is responsible for his own losses and attorney's fees. It also follows that since BirdRock is no longer a party to this lawsuit, it lacks standing to file motions and litigate issues in this case, even the issues of damages, fees and expenses. Therefore, the Court should deny BirdRock's Motion for lack of standing.

### F.     BirdRock Is Not Entitled to Recover The Bond Amount Because It Has Not Established Causation.

If the Court concludes that BirdRock is entitled to recover damages that were proximately caused by the TRO in this case, BirdRock's damage amount is limited to the amount of the TRO bond of $10,000. Rule 65(c) of the Federal Rules of Civil Procedure states that:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

"To recover against an injunction bond, a party must prove that it was wrongfully enjoined and that its damages were proximately caused by the erroneously issued injunction." *Milan Exp., Inc.*

*v. Averitt Exp., Inc.*, 254 F.3d 966, 981 (11th Cir. 2001); *See also HPC US Fund 1, L.P. v. Wood*, No. 13-61825-CIV, 2014 WL 12496559, at 2 (S.D. Fla. May 9, 2014).  Numerous courts have since held that this holding "suggest[s] that an injunction bond represents the upper limit of damages for which a wrongfully enjoined party can recover." *Delta T, LLC v. Kale Fans Am. S.A. De C.V.*, No. 6:20-cv-170-Orl-40EJK, 2020 WL 1674328, at 5 (M.D. Fla. Feb. 25, 2020); *Transonic Sys., Inc. v. Non-Invasive Med. Techs. Corp*., 75 F. App'x 765 (Fed. Cir. 2003). Recognizing that recovery for a wrongful injunction is limited to the bond, district courts in the Eleventh Circuit have noted that "the bond is treated by most courts as a contract by which the amount posted is the consideration or price.'" *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 297 F.R.D. 633  (N.D. Ala. 2014); *See Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989); *Nokia Corp. v. Interdigital, Inc.*, 645 F.3d 553, 559 (2d Cir. 2011). Recovery in excess of the bond is contrary to the tradeoff provided by Rule 65. *Pierce Mfg., Inc. v. E-One, Inc.*, No. 8:18-CV-617-TPB-TGW, 2022 WL 479802, at 3 (M.D. Fla. Feb. 16, 2022).

In this case, BirdRock cannot recover more than the $10,000 bond that was set by this Court. *Transonic Sys. v. Non-Invasive Med. Techs. Corp*., 75 F. App'x 765, 779 (Fed. Cir. 2003) ("the enjoined party may not recover more than the amount of the bond set by the judge who granted the preliminary injunction."). BirdRock has the burden of proving its damages were proximately caused by the erroneously issued injunction. *Milan*, 254 F.3d at 981.

In its request for damages, BirdRock contends that sales volume of these products dropped from 142 units per day prior to the TRO to 74 units per day since the date of the TRO. (ECF No. 56-8 Ex. H at ¶¶20-21.) Yet, BirdRock has neither alleged, nor proven causation or shown any reports or supporting data. Presumably, sales of Plaintiff's snowbrush/scraper during the winter holiday season (just prior to the TRO) would have been much higher than subsequent months. Similarly, it is reasonable to presume that sales of Plaintiff's snowbrush/scraper would be

significantly higher at the beginning of the winter season (prior to the TRO) than at the end of the season. Nor has BirdRock provided any evidence to support its statement that the TRO caused it to reduce its prices and increase its advertising spending.

Additionally, any damages BirdRock may be entitled to are legally limited in time by the lifting of the TRO. BirdRock is not allowed to recover under the bond for any damages sustained after the injunction was lifted on February 7, 2023. *See NCAA v. Murphy*, No. 14-06450 (FLW), 2020 U.S. Dist. LEXIS 227058, at 18-19 (D.N.J. Dec. 3, 2020) (noting that neither Rule 65 nor the court's inherent authority allow recovery against the bond for damages incurred after the preliminary injunction expires).   Thus, BirdRock may not recover for any alleged damages incurred after February 7. The only damage that BirdRock alleges may have occurred during the pendency of the TRO are alleged sales that may have been lost during the pendency of the TRO. However, as stated *supra*, those damage amounts are not supported by any verifiable evidence in the form of prior sale patterns and rely exclusively on the affiant's average sales guestimate.

BirdRock's chief representative Adam Waxman also maintains that he and his staff spent time during the pendency of the TRO dealing with issues caused by this lawsuit and then attempts to calculate the value of their time based on some unknown formula. BirdRock has not offered any legal authority to support its request for $21,245 in employee fees/time spent worrying about this case. None of this work was necessary or useful. In fact, BirdRock did not even have to retain legal counsel. BirdRock found out about this litigation on Friday, February 3, 2023. Once BirdRock made Plaintiff aware of its status as a U.S.-based company on February 5, Plaintiff took all necessary measures to ensure BirdRock was dropped from this litigation, re-activated on Amazon, and received its Amazon payout. All of this occurred by February 9. None of the time spent by BirdRock should be recoverable because it was not reasonable or necessary. BirdRocks' recovery under the bond should be far less than $10,000. This TRO was very short lived, Plaintiff never stopped selling its other products, its post-TRO revenues are not recoverable under the rule, and

that the accused products *may* have been available for sale all along. BirdRock's damages claim is premised on what "would have happened" if Amazon had not unfrozen its payments, the definition of speculative. (ECF No. 56 at 6.)

BirdRock also claims it is entitled to recover more than $100,000 in lost profits and miscellaneous damages of $21,245 - for a total of approximately $121,245.00. This is an exorbitant amount of money to seek based on mere conclusions, speculation and assumptions in a self-serving affidavit. BirdRock's self-serving statements that it suffered hundreds of thousands of dollars in damages caused by reduced sales velocity/momentum, that it spent thousands of dollars worth of time having the accounts reinstated with Amazon (which efforts were conducted by at least six different employees), future and unidentifiable damages, some in the form of 'negative algorithm placement' and some other damages which cannot be attributed to the short lived TRO, such as BirdRock's post TRO decision to reduce prices, are not supported by actual evidence and not recoverable under the rule.

If the Court determines that BirdRock is entitled to recover any of these damages, Plaintiff respectfully requests that it be permitted to conduct limited discovery on the issues of lost sales, lost profits and any other damages sought by BirdRock. Plaintiff should be entitled to explore the evidentiary bases of these amounts in order to rebut them.

### G.    BirRock's Motion Does Not Comply With Local Rules and Should be Denied

BirdRock's motion should be denied with prejudice because it fails to comply with multiple requirements of Local Rule 7.3. A party's "failure to comply with Local Rule 7.3 is fatal to its claim for attorneys' fees." *Majestic Mirrors & Frame, Ltd. Liab. Co. v. Elec. Mirror, Ltd. Liab. Co.*, No. 07-21300-CIV, 2017 U.S. Dist. LEXIS 223984, at 19 (SD. Fla. Oct. 10, 2017).

Local Rule 7.3(a)(4) states that a motion for attorney's fees shall "disclose the terms of any applicable fee agreement." Local Rule 7.3's requirements are not optional, but mandatory. *Norych*

21

*v. Admiral Ins. Co.*, No. 08–60330–CIV–ALTONAGA, 2010 WL 2557502, at 2 (S.D. Fla. Jun.23, 2010). The Motion states that "BirdRock Home is obligated to pay its law firm on an hourly basis." Such a statement is too vague to meet the requirements of Local Rule 7.3 (a)(4).  Accordingly, the actual terms of this agreement (if not a copy of the executed agreement itself) must be stated in the Motion for the Court to evaluate the requested recovery. The Motion could be denied on this ground alone. See *Sriskada v. Harbor Pita, Inc.*, No. 14-20526-CIV, 2015 WL 4041298, at 1 (S.D. Fla. July 1, 2015) (denying motion for fees for failure to disclose the terms of any applicable fee agreement as required by Local Rule 7.3 (a)(4)).

Local Rule 7.3 (a)(5)(A) requires that "[t]he motion shall ... provide ... the ... qualifications for each timekeeper for whom fees are sought..."  BirdRock has not done so.  Instead, BirdRock provided the years of experience of its attorneys and dropped some footnotes to some websites. An attorney's experience as a practicing attorney does not equate to the attorney's qualifications to support its request for fees request.

Local Rule 7.3(a)(7) is clear that a motion under this rule must be verified. BirdRock's motion fails to include this essential requirement. A party's failure to comply with Local Rule 7.3 is a sufficient basis to deny its fees and costs motion.  *J. B. Hunt Transp., Inc. v. S & D Transp., Inc.* , 589 F. App'x 930, 933 (11th Cir. 2014) ( "Because the district court held that J.B. Hunt failed to comply with Local Rule 7.3 , which constituted an independently sufficient basis to deny J.B. Hunt's motions, we affirm.").

**H.  The Attorney's Fees Sought by BirdRock are Excessive and Unreasonable.**

Further to BirdRock's fatal non-compliance with Local Rue 7.3 articulated above, there are additional objections to BirdRock's fees claim.  Local Rule 7.3(b) requires that the non-moving party "shall describe in writing and with reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as to amount, and shall provide

supporting legal authority." L.R. 7.3(b). In compliance with this rule, Plaintiff sets forth its arguments challenging BirdRock's counsel hourly rate and time entries as further detailed below.

BirdRock seeks reimbursement of $74,923.81 in attorney's fees based on two filings, one of which was filed by Plantiff and required no action or response on BirdRock's part and one that was filed by BirdRock, but which was redundant and unnecessary, as explained *supra*. These fees were incurred *after* the case was dismissed. BirdRock has not cited any authority as to why it should be entitled to fees incurred after the case was dismissed against its client.

Additionally, the hours expended by BirdRock's four (4) attorneys are unreasonable and should be reduced because counsel for BirdRock has overstaffed the matter and has failed to exercise sound billing judgment. See *Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1366 (S.D. Fla. 2010) (overstaffing is an appropriate basis for deducting the hours sought in a fee application). Finally, Plaintiff objects to the $7,915.31 in costs sought by BirdRock, as there is no legal basis to support these costs and BirdRock has provided no documentation in support thereof.

In Florida, courts use the "lodestar" method to calculate an objective value to an attorney's services. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Attorneys are required to exclude "excessive, redundant, or otherwise unnecessary hours," which are hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, (1983).

Lodestar requires the court to determine a reasonable hourly rate for the attorneys seeking their fees. Similarly, BirdRock bears the burden of producing satisfactory evidence to the Court of the requested rates for each attorney allegedly performing work on the matter, and must submit

more than just the affidavit of an attorney who himself performed some or all of the work at issue. *See Norman*, 836 F.2d at 1299. BirdRock has failed to comply with this requirement.

### 1. Objection to Hourly Rates

#### a. *The Hourly Rates of the Attorneys Are Not Supported by Evidence*

In its Motion, BirdRock provides the names of the four (4) attorneys and the number of years of practice of each of the attorneys but as stated supra, it fails to set forth qualifications for each timekeeper for whom fees are sought.  The billing statement provided by BirdRock's attorneys reflect an attorney with 5 years of experience billing at the same hourly rate as one with 25 years of experience. There is no support that these hourly rates are reasonable and BirdRock bears the burden of producing satisfactory evidence to the Court that the rates requested for each respective attorney represent the prevailing market rate in South Florida for "similar services of lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299.

Also, counsel seeking fees for work performed by multiple attorneys in the firm must show the court that the attorneys were "not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Id.* at 1302; *see Chavez v. Mercantil Commercebank, N.A.,* No. 10-23244-CIV, 2015 WL 136388, at *1 (S.D. Fla. Jan. 9, 2015) ("Duplication inevitably occurs when lawyers hold conferences, call each other on the phone, write each other letters and memoranda, or when several lawyers bill for reading the same document received from the defendants or the court."). In this specific case, the billing statement is plagued with instances of attorneys duplicating their billing and performing the same work. Additionally, many of the time entries are vague and lack the specificity required by the Rules and Regulations of The Florida Bar.

#### b. *Objection to Hourly Rate of A. M. Lucas*

Plaintiff objects to the $275.00 hourly rate sought for what appears to be a paralegal, A. M. Lucas, as excessive and unsupported by satisfactory evidence. While the involvement may be minimal, the hourly rate BirdRock seeks for his/her time is excessive and does not reflect the prevailing rate in Miami-Dade County as ordered by this Court. *See Burgos v. SunTrust Bank, N.A.*, No. 13-21197-CIV, 2020 WL 2299937, at *9 (S.D. Fla. Mar. 31, 2020) (finding an hourly rate of $100.00 per hour reasonable for a paralegal with twenty-eight (28) years of experience); *Ochoa v. Comm'r of Soc. Sec.*, 2020 WL 3064774, at 2 (S.D. Fla. June 9, 2020) (finding an hourly rate of $80.00 reasonable for a paralegal).

**2.      Objections to Time Entries Pursuant to Local Rule 7.3(a).**

Plaintiff, pursuant to Local Rule 7.3(a), hereby objects to the total hours and amount of fees sought by BirdRock for the dismissal without prejudice of the instant action. A close review of the time entries shows that counsel for BirdRock attorney's billing is excessive, inefficient and the bulk of the entries are unjustified as they occurred subsequent to BirdRock's dismissal of the instant action and appear to be an attempt to recover fees-on-fees.

BirdRock's attorneys claim they spent a total of 107.3 hours in a case where the Plaintiff had dismissed its case against BirdRock and only two of the four attorneys working on the matter had made an appearance in the case. By the time all of BirdRock's attorneys made an appearance, the court had already entered a paperless order dismissing the claims without prejudice.

The overwhelming number of hours claimed is unreasonably high given the little involvement BirdRock had in the case. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348 (11th Cir. 2008) (noting that when the number of hours claimed is unreasonably high, a court may conduct an hour-by-hour analysis or may reduce the requested hours with an across-the-board cut)

*a.      Objections to Block Billing*

Plaintiff objects to the entries of Mr. Pogorzelski on 02/03/23, 02/04/2023, 02/05/2023, 02/06/23, 02/07/2023, 02/10/223, 02/15/2023, 02/23/2023 and Mr. Mesher's entries on 02/03/23, 02/04/23, 02/06/23 and 02/10/2023 for a number of reasons. Mr. Pogorzelski' and Mr. Mesher's time entries on these dates are for blocks of time spent on various tasks which do not itemize the time spent on each specific task. Because of this block billing it is impossible "to ascertain how much time was spent on each task" and determine the reasonableness of the fee. *Estrada v. Alexim Trading Corp.*, No. 10-CV-23696, 2012 WL 4449470, at 11 (S.D. Fla. Sept. 26, 2012) (reducing hours for block billing where counsel failed to separate the entries to allow the court to properly determine whether a reasonable amount of time was spent reviewing a particular filing as opposed to conferring about the filing).

> b. *Objections to Double-billing*

Plaintiff objects to the numerous instances of double billing. The Rules of the Florida bar prohibit attorneys from charging for the same time or work twice. Birdrock counsel's entries on 02/03/23, 02/04/23, 02/05/23, 02/06/23, 02/07/23 are fraught with double billing. On February 03, 2023 Mr. Mesher and Mr. Pogorzelski both bill for "investigation" and/or "research" as well as for speaking with each other. This also occurs on February 04, 2023 when the same attorneys speak to a client representative and when Mr. Mesher instructs Mr. Pogorzelski on a "plan". This continues on to February 05, 2023. Additionally, on February 06, 2023, both Mr. Morton and Mr. Pogorzelski bill an excessive amount of time for reviewing a one-page dismissal. That same day, Mr. Johnson and Mr. Morton spent a combined 2.1 hours both working on a one-page unopposed motion to modify the TRO. Mr. Mesher has two almost identical entries on 02/08/23 where he speaks with his client. Mr. Morton also engages in double-billing on 02/07/23 and 02/08/23, 02/10/23, 02/15/23 in its entries regarding "strategies regarding fees." This is also duplicated by Mr. Johnson on 02/24/2027 and 02/27/23. There is also double-billing regarding a review of a

response letter from Plaintiff's counsel; these entries are all entered by Mr. Johnson, Mr. Mesher, Mr. Morton *and* Mr. Pogorzelski on 02/22/23 and 02/23/23.

### c.   *Objections to Entries after Birdrock Was Dismissed*

Plaintiff objects to the multiple entries by BirdRock's counsel for 02/08/23, 02/09/23, 02/10/23, 02/13/23, 02/14/23, 02/15/23, 02/16/2023, 02/17/23, 02/20/23, 02/21/23, 02/22/23, 02/23/23, 02/24/23, 02/27/23 and 03/03/23.   BirdRock cannot recover on these entries because they occurred subsequent to Plaintiff's dismissal of the instant action. The entries are also unrelated to BirdRock's litigation efforts in getting its case dismissed and focused mostly on their counsels' attempt to strategize so that they can recover attorney's fees on attorney's fees.

### d.   *Objections to clerical work*

Plaintiff objects to entries by Mr. Johnson on 02/05/2023, 02/06/2023 and A. M. Lucas on 02/06/23 which consist of purely clerical work where Mr. Johnson is reviewing the docket, drafting notices of appearance, and communicating with the clerk. On 02/20/23, Mr. Johnson billed for confirming timing on his filing a motion for attorney's fees. All these are improper entries for clerical work. *See Hansen v. Deercreek Plaza, LLC*, 420 F. Supp. 2d 1346 (S.D. Fla. 2006) (explaining that "work that is clerical or secretarial in nature is not separately recoverable").

### e.   *Objections to Numerous Entries by Mr. Morton for Lacking Specificity.*

Plaintiff objects to the numerous instances where Mr. Morton's billing consists of entries such as "[a]nalyze papers; strategize regarding next steps", "strategize regarding research", as they lack specificity and/or otherwise seem unreasonable. These entries are dated 02/03/23, 02/04/23, 02/05/23, 02/06/23, 02/07/2023, 02/08/07, 02/15/23, 03/03/23.

### f.   *Objections to Unreasonable Time Spent Reviewing Correspondence from Plaintiff's Counsel*

BirdRock's counsel unreasonably spent approximately 8.7 billable hours reviewing a letter of correspondence from Plaintiff. The approximate 8.7 hours spent are unreasonable and also constitute double billing because four different attorneys performed the same, duplicative tasks. These entries are reflected on dates 02/22/23 and 02/23/23 for each of the four attorneys.

g.     *Objection to Unreasonable Time Spent*
       *Preparing a Demand Letter to Plaintiff's Counsel*

BirdRock's counsel unreasonably spent approximately 12.8 billable hours, outlining and drafting a demand letter to Plaintiff. The approximate 12.8 hours spent are unreasonable and also constitute double billing as three different attorneys working on this case were engaged in performing the same, duplicative task. These entries are reflected on dates 02/13/23, 2/14/23, 2/15/23, 2/16/23, for Mr. Mesher, Mr. Johnson and Mr. Pogorzelski.

h.     *Objection to Pro Hac Vice Fees which Are Not Recoverable*

Divisions of this Court have reasoned that *pro hac vice* fees are not recoverable because they are an expense of counsel, not the client. *See Hernandez v. Motorola Mobility, Inc.*, No. 12-60930-CIV, 2013 WL 4773263, at 5 (S.D. Fla. Sept. 4, 2013); *Covington v. Arizona Beverage Co., LLC*, No. 08-21894-CIV, 2011 WL 810592 at 3-4 (S.D. Fla. Jan. 25, 2011). "I am persuaded by these cases and therefore recommend that the Court disallow the $450.00 of *pro hac vice* admission fees. The filing fee of $350.00 is undisputed and properly awarded under section 1920." *Buccellati Holding Italia SPA v. Laura Buccellati LLC*, No. 13-21297-CIV, 2015 WL 11202358, at 7 (S.D. Fla. Mar. 10, 2015). The Court should deny recovery of these fees as non-recoverable costs.

i.     *Objection to Fee- on-Fees*

"[A] district court 'may'—and that is the operative word in § 1927, not 'must'—award the moving party costs, expenses, and fees.").  Therefore, it follows that a district court may refuse to award fees-on-fees.  *See, e.g., Moore v. Intuitive Surgical, Inc.,* 2019 U.S. Dist. LEXIS 233821

(M.D. Ga. Apr. 1, 2019) ("it does not "undermine [any] congressional policies" to decline to award fees-on-fees).

BirdRock should not be entitled to recover for any fees incurred subsequent to the dismissal of this action against BirdRock - not even its specious motion for attorney's fees - because BirdRock has not acted in good faith. BirdRock's request for more than $74,000.00 in fees for minimal, and mostly unnecessary work, is an attempt to recover a windfall. It does not appear that BirdRock's counsel made any attempt to be efficient or practical in managing its time/expenses in this matter. The Supreme Court has long held that district courts also should exclude from fee calculations those hours that were not "reasonably expended." *Hensley v. Eckerhart*, 461 at 433.

Here, BirdRock overstaffed this case and should not be rewarded for its excessive billing. "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.*

Plaintiff cannot imagine that BirdRock would seriously consider billing its client for $74,000.00 worth of work in this matter. Based on the billing records before the Court, BirdRock did not exclude excessive and redundant hours, as required by law. BirdRock did not exercise sound billing judgment and should not be permitted to recover for the fees it incurred briefing this request for excessive fees.

## CONCLUSION

For the above reasons, Plaintiff submits that BirdRock is not entitled to any damages and is not entitled to attorney's fees.

## NO NEED FOR HEARING

Plaintiff does not believe that a hearing is necessary because amongst others, this case, at this juncture, does not deal with "patent infringement and validity" as it pertains to dismissed defendant BirdRock.

Respectfully submitted on this 21st day of April, 2023.

LAW FIRM OF RUBIO & ASSOCIATES, P.A.
Attorneys for Plaintiffs
8950 SW 74 Ct., Suite 1804
Miami, Fl 33156
Telephone: (786) 220-2061
Facsimile: (786) 220-2062
Email: hrubio@rubiolegal.com
Email: apuentes@rubiolegal.com
Email: frubio@rubiolegal.com
Email: info@rubiolegal.com

By:*/s/ Humberto Rubio*
Humberto Rubio, Jr., Esq.
Florida Bar No. 36433
Felipe Rubio, Esq.
Florida Bar No. 123059
M. Arabella Puentes, Esq.
Florida Bar No. 26825

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document has been served through the CMECF filing system and as further provided for by this Court's Orders.

*/s/ Humberto Rubio*
Humberto Rubio